### THE PEOPLE *vs.* S. B. JEWETT.

It is not a good plea to an indictment that one of the *grand jurors* who found the same is not a *freeholder,* &c.

DEMURRER to plea to an indictment. The defendant was indicted for a conspiracy, and the indictment having been removed into this court by *certiorari,* the defendant pleaded that J. W. S., one of the *grand jurors* by whom the indictment was found, before and at the time when he was impannelled charged and sworn as a grand juror, had not a *freehold* of the the value of $150, nor was he in possession of lands under a contract for the purchase of the same and worth $150 in personal property, nor had he made improvements on such lands to the amount of $150, free from all reprises, debts or incumbrances whatsoever ; wherefore he prayed judgment of the indictment, and that the same might be quashed, &c., and that he might not be compelled to answer the same. To this plea there was a general demurrer.

*Greene C. Bronson,* (attorney-general,) for the people.

*J. A. Spencer,* for defendant.

*By the Court,* SUTHERLAND, J. The authorities leave it somewhat doubtful whether it was necessary at common law for grand jurors to be freeholders. Lord *Hale,* in his *Pleas of the Crown,* 2 *Hale,* 155, holds that they ought to be freeholders, but admits that the amount of the freehold required is altogether uncertain. Sir *Wm. Blackstone,* in his *Commentaries,* 4 *Bl. Comm.* 302, adopts the language of Hale, and says, " Grand jurors ought to be freeholders, but to what amount is uncertain, which appears to be a *casus omissus,*" &c. He observes, however, that in practice they are usually gentlemen of the greatest respectability and wealth in the county. Mr. *Chitty,* in his *Treatise on Criminal Law, vol.* 1, *p.* 252, 308, remarks that " It has been frequently taken for granted that none but freeholders can be returned on the panel of grand jurors," and cites Hale and Blackstone to support the position. He says, with those authors, that the amount of the estate required was not fixed at common law; but remarks that, in the times of the feudal system, as no *villein* was eligible to the office of grand juror, none but those who possessed land as freeholders could obtain it. *Villeins* were ineligible as jurors, either grand or petit, I apprehend, on other grounds than a want of freehold estate. A juror must be *liber homo;* that is, as Lord Coke defines it, he must be *a freeman and not bound,* as well as have such freedom of mind that he stand indifferent as he stands unsworn. 1 *Coke, Litt,* 155, *a.* Accordingly, among the causes of principal challenge to a juror is enumerated *defectum libertatis,* as villeins or bondmen. *Coke Litt,* 156, *b. Villeins* were not, in the eye of the law, *probi et legales homines. Harrison* v. *Errington, Popham,* 202. Hawkins, 2 *Hawk.* 216, *b.* 2, *ch.* 25, *sect.* 15, 16, 19, 21, considers it doubtful whether there be any necessity, by the common law or by statute, that a grand juror should be a freeholder. Vide also 2 *Woodeson, sect.* 558.

I am inclined to think that the prevailing opinion among professional men in this state previous to the act of April 16th, 1827, was, that a freehold qualification was not indispensable to a grand juror. From the earliest period of our government, the legislature has expressly enacted that petit jurors should be freeholders; but in acts passed contempo-

raneously in relation to grand jurors, they have merely provided that they should be *good and lawful men.* 1 *R. L.* 327, 339, 2 *id.* 150.   These acts have repeatedly come under the consideration of the legislature, in the various revisions through which our laws have passed ; and it appears to me that an express provision upon this subject would have been introduced, if it had been supposed that a property qualification was necessary for a grand juror.   If a property qualification were conceded to have been necessary at common law, I think our legislation upon the subject must be considered as having altered the common law in that respect.   By the act of April 16, 1827, the mode of selecting grand jurors was essentially changed.   It was by that act made the duty of the supervisors of the several counties, at their annual meetings, to select the grand jurors for the following year, and to prepare a list, to contain not less than double, nor more than four times as many names as shall be required for all the courts of general sessions and oyer and terminer, to be holden in each county during the following year ; and the act then provided as follows ; "and the said supervisors are hereby strictly enjoined and required to select and place in such list the names of such men only as they *shall know, or have good reason to believe, to be possessed of the necessary property qualifications to sit as petit jurors in such county, and to be men of approved integrity, of fair character, of sound judgment, and well informed.*   It is very evident that this provision of the statute is merely directory to the supervisors.   The very form of the expressions used most clearly indicates it. They are strictly *enjoined and required* to select, &c.   It is impressed upon them as a duty, to select such men only as possess, or *as they have reason to believe possess,* the qualifications enumerated in the statute ; that is, property, approved integrity, fair character, sound judgment and information. The want of integrity, or judgment, or information, would be, so far as this statute is concerned, as valid a ground of objection to a grand juror as the want of property.   They are all put upon the same footing ; and I imagine it would hardly be contended that it would be a good plea in avoidance of an indictment, that one or more of the grand jurrors were not

men of fair character or sound judgment, or well inform-
ed.   The statute does not say that none but men of that de-
scription shall be competent to sit as grand jurors ; but it en-
joins it as a duty upon the supervisors to select men who pos-
sess, or who they have reason to believe possess such quali-
fications.   The distinction between a mere direction to a
ministerial officer in a case like this, and a condition prece-
dent to the competency of an individual to serve as a grand
juror, is too obvious to require illustration ; and the intention
of the legislature is too clear to admit of any doubt.

When this case was before the court upon a former occa-
sion, on a motion to quash the indictment, 3 *Wendell*, 314,
it was held that an indictment once found would not be
quashed, because a valid exception or challenge might have
been interposed to one of the grand jurors.   If the excep-
tion is not taken before the indictment found, it will not after-
wards be heard ; and this, although the defendant was not
recognized to appear at the court at which the indictment
was found, and had no knowledge that any complaint would
be preferred against him.   It was there said that no author-
ity was to be found of such an exception after indictment,
and that the inconvenience and delay which would ensue in
the administration of criminal justice, if an indictment could
be set aside on the ground that a valid exception might have
been taken to one of the grand jurors, forbid the establish-
ment of such a principle.

I apprehend a verdict, either in a civil or criminal case,
would not be set aside merely on the ground that one or
more of the jurors had not the property qualification requir-
ed by law.   It very frequently occurs that such mistakes are
made in the panel ; and jurors undoubtedly sometimes serve
without the requisite legal qualifications.   But if the objec-
tion is not raised when the jury is drawn, the parties are con-
cluded, although the fact may not have come to their knowl-
edge until after the trial.   I speak of strictly legal and tech-
nical objections, not of objections which go to the character
of the juror, and shew that he labored under prejudices and
prepossessions which rendered him incapable of acting im-
partially in the case, and that in all human probability there

has not been a fair trial. I have no doubt that cases of that description might exist, in which it would be competent and proper for the court to set aside a verdict; but they must be characterized by very strong and peculiar circumstances. The character of the petit jurors who are to pass definitively upon the guilt or innocence of the accused, is obviously of much more importance to him than that of the grand jurors, who simply prefer the complaint in the form of an indictment.

The objection presented by the plea to the indictment in this case, is simply that one of the grand jurors was not a freeholder, &c. This, in a civil case, would not be a sufficient ground, *per se*, for setting aside the verdict of a jury although the law expressly requires that petit jurors shall be freeholders. Much less ought it to prevail against an indictment, for the reasons which have already been stated.

Judgment for plaintiffs on demurrer, with leave to defendant to plead *de novo*.