DARIUS GREENUP, appellant, *v.* NANCY STOKER, appellee.

*Appeal from St. Clair.*

The rule of the Common Law, which prohibits the party calling a witness proposing to him such questions as will indicate the answer which is desired to be obtained, has not, in practice, usually been considered so strict and imperative as to divest the Courts of a reasonable discretion in permitting questions to be asked and answered, which may be leading in their character, and especially so, when the same is only introductory to the more material matters directly in issue.

On the trial of an action for a breach of a promise to marry, a witness, introduced by the plaintiff, was asked the following question: "Did he court her?" The question was objected to by counsel for the defendant, but the objection was overruled: *Held,* that it was neither objectionable in form, nor in substance; that it was an inquiry about a mere matter of fact, which could be answered by a person of common observation.

The rules applicable to contracts of marriage do not differ materially from those governing contracts in general. Where there has been an absolute, unqualified refusal to perform a contract of this nature, the law will not require of the injured party either a request or offer of performance. It is enough that there has been a *promise* and a refusal inconsistent with the promise.

Where there are several counts in a declaration, and a general instruction is asked, which is a correct principle of law and applicable to some of those counts and to the evidence given under them, the giving of such instruction to the jury is not a cause of error.

A Court will not grant a new trial, or reverse a judgment on error, because of the admission of improper, or the rejection of proper testimony, or for want of proper direction or misdirection of the Judge, who tried the cause, *provided* the Court can clearly see, by an inspection of the whole record, that justice has been done, and that the error complained of could not have affected the merits of the cause, or influenced the verdict of the jury.

A request to marry, or the refusal, as well as the promise, may be proved by circumstances.

The doctrine laid down by this Court, in the case of *Guykowski* v. *The People,* 1 Scam. 476, in regard to the disqualification of aliens to sit as jurors, is limited to capital cases.

ASSUMPSIT in the St. Clair Circuit Court, brought by the appellee against the appellant, and heard before the Hon. Gustavus P. Koerner, and a jury, at the October term 1846. Verdict for the plaintiff below for $525·00, upon which the Court rendered judgment.

The pleadings, instructions asked, &c., appear in the Opinion of the Court.

*L. Trumbull,* for the appellant, relied upon the following points and authorities for a reversal of the judgment:

1. It was erroneous to permit Fulweiller, who had seen the parties together but once, to give his opinion as to the character of the attention paid by Greenup. The witnesses should state facts, and it is for the jury to draw conclusions. The question, "Did he court her?" was also leading, and therefore improper. 1 Starkie's Ev. 150, 152.

2. If no time or place for the marriage is appointed, which was the case in all the counts except the first, an offer to perform must be alleged and proved; allegations of readiness and willingness are not sufficient. *Bucks* v. *Shane,* 2 Bibb, 341; *Martin* v. *Patton,* 1 Littell, 235; *Gough* v. *Farr,* 12 Eng. Com. Law R. 293; Gould's Pl. 176.

The first instruction given on the part of plaintiff, which was general to all the counts, that it was not necessary for plaintiff to prove a request, was therefore erroneous. *Coke* v. *Ferrall,* 13 Wend. 285; *Porter* v. *Rose,* 12 Johns. 209; *Tapping* v. *Root,* 5 Cowen, 204; *Nelson* v. *Bostwick,* 5 Hill's (N. Y.) R. 37; 1 Chitty's Pl. 363; 1 Saunders, 33, note 2.

3. The third count is upon a special contract made and to be performed at a certain time; and the third instruction given on behalf of plaintiff, that the time of making the marriage contract and the time of the refusal by Greenup need not be proved precisely as laid, and that proof of different times would sustain the declaration, was erroneous when applied to this count; and for the same reason the third instruction asked by defendant should have been given. The The *allegata* and *probata* must correspond.

4. The eleventh instruction asked by defendant should have been given.

5. The fifth count of said declaration, which is on a promise to marry on request, avers no request, and is therefore defective, and the instruction to disregard it should have been given. Rev. Stat. 417, § 25; *Bach* v. *Owen,* 5 Johns. 409.

6. A special request and refusal being alleged in the first and second counts, it was incumbent on the plaintiff below

to prove said request as laid, and the instructions to that effect asked by defendant should have been given.

7. The verdict was manifestly contrary to evidence, and for this cause a new trial should have been granted.

8. The fact that two of the jurors who rendered the verdict in said cause were aliens, which fact was unknown to the defendant till after the rendition of the verdict, is a ground for a new trial, and the Court erred in not granting it. *Guykowski* v. *The People*, 1 Scam. 476.

The want of a freehold qualification in one of the jurors is a ground for a new trial, if the fact was not known to the party making the motion at the time of the trial. *Briggs* v. *Georgia*, 15 Vt. 61; *King* v. *Tremaine*, 16 Eng. Com. Law R. 318.

*W. H. Underwood*, and *J. Gillespie*, for the appellee.

A witness may be asked whether, from the appearance of parties, they were or were not sincerely attached. *McKee* v. *Nelson*, 4 Cowen, 357.

A leading question is no ground of error. It is addressed to the sound discretion of the Court. 2 Phil. Ev. 724, note 506; *Warren* v. *McHatton*, 2 Scam. 33; 1 Starkie's Ev. 151.

The question in this case was not leading. It only called the attention of the witness to a collateral fact. *Williams* v. *Jarrot*, 1 Gilman, 130; *Leonard* v. *Thomas*, 4 Scam. 557, 558.

The time and place of making contract must be alleged, but need not be proved. *Martin* v. *Patton*, 1 Littell, 236; 1 Greenl. Ev. 56.

Injury to plaintiff's character is a proper subject for the consideration of the jury in assessing damages. *Johnson* v. *Calkins*, 1 Johns. 116. The damages depend upon the peculiar circumstances of each case. 2 Tidd's Pr. 875; *Southron* v. *Rexford*, 6 Cowen, 261.

Greenup failed to use due diligence, by inquiring of jurors as to their competency. 2 New Hamp. 360; *People* v. *Jewett*, 6 Wend. 389; *Crawford* v. *Creagle*, 1 Ala. 593; *Simpson* v. *Pitman*, 13 Ohio, 367; *Jeffries* v. *Randall*, 14

Mass. 206; *Amherst* v. *Hadley*, 1 Pick. 41, 42; *Vennum* v. *Harwood*, 1 Gilman, 661; 15 Verm. 73. It is no ground for a new trial that one of the jurors was an alien. 2 Peters' Cond. R. 499 and 500; 15 Eng. Com. Law R. 253.

The informality of the verdict should have been objected to in the Court below, or it is waived. *Schlencker* v. *Risley*, 3 Scam. 487; *Bank* v. *Batty*, 4 Scam. 202.

A refusal to marry dispenses with the necessity of a request. 2 Chitty's Pl. 322, n.

The Opinion of the Court was delivered by

PURPLE, J.* This action was instituted by the appellee against the appellant, to recover damages for the breach of a marriage contract.

The declaration contains five counts, to one of which (the fourth) the Circuit Court sustained a demurrer.

The first count is upon a promise to marry within a reasonable time, and avers that such reasonable time has elapsed, and that the appellee, to wit, on the 25th March, A. D. 1844, after the making of the promise, requested the appellant to marry her, and that he, upon such request, refused.

The second count is upon a promise to marry generally, and avers that appellee has always been ready and willing to marry the appellant; and also that appellee, (to wit,) on the 20th March, 1844, requested appellant to marry her, and that he refused.

The third count is upon a special contract to marry the then next morning, that is to say, on the 1st day of January, A. D. 1844, and avers a readiness and willingness on the part of appellee to perform the contract, and that appellant, although often requested, on his part always wholly refused.

The fifth count is upon a promise to marry upon request, and avers a readiness and willingness on the part of appellee to marry, and a positive refusal on the part of the appellant.

The appellant pleaded the general issue.

The jury found a general verdict for the appellee, and assessed her damages at $525.

---

* YOUNG, J. did not sit in this case.

The Circuit Court, at the request of the plaintiff's counsel in that Court, instructed the jury:

1. That to entitle the plaintiff to recover, it is not necessary that she should prove an express contract on the part of defendant to marry her; but that an agreement to marry may be inferred from those circumstances which usually accompany an agreement to marry;

2. That if the jury believe from the evidence, that the defendant refused to marry plaintiff, then it is not necessary that plaintiff should prove a request to defendant to marry her, in order to maintain this action;" and

3. That the time of making the marriage contract and the time of refusal by Greenup need not be proved precisely as alleged; but proof of different times will sustain the declaration if such times be before the commencement of this suit.

The counsel for the defendant below requested the Court to instruct the jury:

1. That in order to sustain the first count of her declaration on the part of the plaintiff, it is necessary for her to prove a request and refusal, and that unless the jury believe from the evidence that the said Miss Stoker requested said Greenup to marry her on the 25th of March, A. D. 1844, as stated in said count, and that he refused upon such request so to do, they must find for the defendant upon said first count;

2. That unless it has been proved by testimony so as to satisfy the jury of the fact that the said Miss Stoker requested said Greenup to marry her on the 20th of March, A. D. 1844, as alleged in the second count of said declaration, they are bound to find for the defendant upon said second count;

3. That unless the jury believe from the evidence that the said Miss Stoker and the said Greenup mutually promised each other to marry on the then next morning as alleged in said third count, they must find for the defendant upon the third count of said declaration;"

4. That unless they believe from the evidence that the said Miss Stoker was ready and offered to marry the said

Greenup, and that he refused to marry her at the time stated in said third count, they must find for the defendant;

5.  That unless the jury believed from the evidence that Miss Stoker and the said Greenup promised on the 31st day of December, 1843, to marry each other on the next morning, January 1st, 1844, and that she being ready, he actually refused to marry her, they must find for the defendant upon said third count;

6.  That the fourth count of the declaration is not before the jury and that they have nothing to do with it;

7.  That unless the jury believe from the evidence, that the said Greenup promised to marry the said Nancy Stoker on request, and that upon being requested or without request, that having the opportunity, he refused to marry her, they are bound to find for the defendant upon the fifth and last count of the declaration;

8.  That the jury are bound to find in favor of the defendant upon the first and second counts of said declaration, unless they believe from the evidence before them, that the said Nancy Stoker requested said Greenup to marry her and that he refused to do so; that proof of the bare omission or neglect of the defendant to marry the plaintiff even after he has agreed to do so is not sufficient to entitle the plaintiff to recover upon either of said counts;

9.  That unless it has been proved by testimony that the said Nancy Stoker requested the said Greenup to marry her, and that he refused upon such request to do so, or that some acts were done by the parties which in their opinion are tantamount to a request and refusal, they are bound to find the issues upon the first, second and fifth counts for said Greenup, although they should believe from the evidence that he once promised to marry the said Nancy;

10.  That even should the jury believe from the evidence, that Greenup promised generally to marry the said Nancy Stoker, or to marry her in a reasonable time, or on request, without agreeing upon any particular time, still they cannot find in her favor upon such proof without proof, also, that she subsequently requested said Greenup to marry her and he refused to do so;

11.   That this suit is brought to recover damages for a breach of contract, and in no event will the jury be justified in giving any other or greater damages than justly arise out of a failure to perform said contract, should they believe that one existed;

12.   That it is not proper for the jury, in their estimate of damages, should they even find for the plaintiff, to take into consideration any injury to the plaintiff's reputation or character; and

13.   That the jury should disregard the fifth and last count of said declaration, because the same is faulty.

The Court gave the 6th, 7th, 8th, 9th and 10th instructions, and also the 11th and 12th, qualified as follows:

11.   That this suit is brought to recover damages for a breach of contract, and in no event will the jury be justified in giving any other or greater damages than justly arise out of a failure to perform said contract, should they believe that one existed; but the injury inflicted to the feelings of the plaintiff, and to her standing in society, are consequences which may justly arise out of the contract; and may be taken into the consideration of the jury in the assessment of damages.

12.   That it is not proper for the jury in their assessment of damages, should they even find for the plaintiff, to take into consideration any injury to the plaintiff's reputation or character, only so far as it may be a consequence of the non-performance.

The residue of the instructions asked by the counsel for the defendant below were refused, and an exception taken to the opinion of the Court in denying the same, and qualifying the eleventh and twelfth instructions, as above stated, and also to the giving of those asked by the plaintiff below. The bill of exceptions contains all the evidence in the cause.

During the progress of the trial before the jury, a witness testified that he had known the parties since 1838; saw appellant pay attentions to appellee; these attentions commenced in the fall of 1838, and continued four or five years, &c., &c.   The counsel for the appellee then asked the witness, "Did he court her?"   This question and the answer to the

Greenup *v.* Stoker.

same was objected to, the objection overruled, and an excep-
tion taken.   Witness answered, "yes, it was my impression."
The same counsel then asked the following question: "How
long did he court her?"   Witness answered, "four or five
years."   This question and answer also objected to, objec-
tion overruled, and exception taken.

Upon the return of the verdict of the jury, the appellant
moved the Court to set the same aside and grant a new trial:

1.    Because the verdict was contrary to evidence;

2.    Because it was contrary to law;

3.  Because the damages were excessive;

4.    Because the Court misdirected the jury;

5.    Because the Court refused to give proper instructions;
and

6.    Because two of the jurors who tried the cause were
aliens and not naturalized citizens of the United States,
which fact was unknown to appellant till after the verdict
was rendered.

The last reason assigned is supported by the affidavit of
appellant, which is made part of the record, that two of the
jurors were alien born, and had not been naturalized, and
that this fact was unknown to him, and as he was informed
and believed, to his counsel, until after the return of the
verdict.

The motion for a new trial was overruled, and judgment
rendered on the verdict, to which decision the appellant also
excepted.

The appellant now assigns for error:

1.    That improper questions were allowed to be asked,
and improper testimony to be given in evidence to the jury;

2.    That illegal and improper instructions were given to
the jury;

3.    That legal and proper instructions were refused;

4.    That the motion to set aside said verdict and grant a
new trial was refused when said verdict was contrary to both
law and evidence, and was rendered by a jury, part of whom
were aliens, which fact was unknown to the defendant or
his counsel till after the rendition of said verdict;

5. That judgment was rendered upon a verdict finding only one of the issues for the plaintiff, without specifying which, or making any disposition of the other issues; and

6. That judgment was rendered for the plaintiff, when, by law, judgment should have been rendered in favor of the defendant.

The first point made by the appellant is, that it was erroneous to permit Fulweiler, one of the defendant's witnesses to state his opinion as to the character of the plaintiff's attentions to the defendant.

This witness had testified that he had known the parties since 1838. That he had seen appellant pay attentions to the appellee. That these attentions commenced in the fall of 1838, and continued four or five years; was in the habit of observing this several times. That he waited on her as a gentleman would wait on a lady. Saw him walking with her; could not say attentions were frequent. Saw him walking with her once from church, and but once. Here the counsel asked the witness, "Did he court her?" The witness answered that such was his impression.

This question and answer were objected to, and the objection overruled by the Court; and it is urged that the ruling of the Court was erroneous, both on account of the impropriety of the evidence and the leading character of the interrogatory proposed to the witness.

However much we may be disposed to question the policy of the continuance of the established rule of the Common Law, which prohibits the party calling a witness, proposing to him such questions as will indicate the answer which is desired to be obtained, the practice has been too long settled and acquiesced in to be disturbed, except by legislative intervention. Originally it may have been a useful and necessary method of eliciting truth. It was based upon the supposition that the witnesses were inclined to favor the party by whom they were called, and to testify in his favor if they could but receive an intimation of his wishes. It would be but charitable to conclude that the necessity which introduced the doctrine has for a long time ceased to exist.

Greenup v. Stoker.

This rule, however, in practice has not usually been considered so strict and imperative as to divest the Courts of a reasonable discretion in permitting questions to be asked and answered which may be leading in their character, and especially so when the same is only introductory to the more material matters directly in issue; and seldom, if ever, has it been considered that a mere practical error in this respect would afford even the slightest grounds for a new trial, or to reverse a cause on error.  The witness is present in Court, and may be subjected to such cross-examination as would tend to elicit the truth, or to satisfy the Court and jury how far he is entitled to credit, whether the interrogatories which he has answered have been leading or otherwise.

Having said thus much in relation to the form of the question proposed to this witness, I proceed to consider the character of the evidence and the propriety of permitting the witness to answer the interrogatory.  The point has been argued by counsel upon the assumption, that the witness has been permitted to express an opinion upon some matter involving the exercise of science or skill, without having first laid the foundation for such testimony by proof of his ability and qualifications to form a correct conclusion upon the subject matter about which his opinion is solicited.  To the Court it appears to be an inquiry about a mere matter of fact, which could be answered by any one who had the requisite knowledge, without the aid of any science or skill, except common observation and universal experience, and which might have been obvious to the senses of any man of ordinary understanding and discernment.  It is universally understood to mean those attentions which a man pays to a woman when he manifests an intention to engage her affections.  In the common language of the country, to court or to pay attentions to a lady, are synonymous terms.  The latter is but a method slightly more refined and genteel of expressing the same thing.

The second point made by the counsel for the plaintiff involves the consideration of the sufficiency of the declaration and several of the instructions given and refused, as

applicable to particular counts of the same; and it is con-
tended, that if no time or place for the marriage is appointed,
an offer to perform must be alleged and proved, and that
allegations of readiness and willingness are insufficient.

The rules applicable to contracts of marriage do not differ
materially from those governing contracts in general. In
both, the intention of the parties must be collected from the
terms employed, whether the contract be verbal or in wri-
ting, and their rights and liabilities determined accordingly.
In the case of mutual and dependent promises, neither can
maintain an action without first showing a willingness and
an offer to perform on his part, or that the other party has
done some act dispensing with such offer. 1 Saund. 33;
*Bach* v. *Owen*, 5 Term R. 409; *Porter* v. *Rose*, 12 Johns. 208;
*Topping* v. *Root*, 5 Cowen, 404; *Cook* v. *Farrell's Adm'rs*,
13 Wend. 285; *Nelson* v. *Bostwick*, 5 Hill's (N. Y.) R. 37.

So, also, in actions for breaches of marriage contracts it
has been held, that in such action for not marrying in a
reasonable time the plaintiff must aver a request to marry or
make *some other* allegation to dispense with it. 1 Chitty's
Pl. 363.

"Marriage contracts do not differ in principle from other
species of contracts where mutual and concurrent acts are
to be performed. Neither party to such contract can main-
tain an action against the other without showing performance
or an offer to perform; and when the time and place of per-
formance are not fixed by the agreement of the parties to
entitle either to an action, an averment of an offer to marry
is indispensably necessary." *Burks* v. *Shaine*, 2 Bibb, 341.

If the declaration be upon a promise to marry upon re-
quest, or in a reasonable time, the plaintiff must aver and
prove a special request, or an offer to perform; a bare alle-
gation of readiness and willingness is not sufficient. *Martin*
v. *Patton*, 1 Littell, 234.

It is not, however, to be supposed that the law intended
to impose upon the party, who had been guiltless of a violation
of a marriage or other contract, and who was entitled to re-
cover damages for a breach thereof by the other, the unmean-

Greenup *v.* Stoker.

ing, idle ceremony of either a request or offer of performance, where there had been an absolute unqualified refusal.

Such strictness is not required, even in cases of ordinary traffic when money is to be paid or tendered, as a condition precedent to the party's right to insist upon performance. The necessity of such a tender may be waived by a previous refusal to receive the money. And will it then be said, that when the marriage contract has been fairly and freely made, and the mutual affections of the parties sacredly pledged to its solemn consummation and fulfilment; that she, whose heart has been betrayed into unrequited or forgotten love, whose young hopes have been blighted by cold neglect and causeless infidelity, scorned, refused, despised, must still submit to the humiliating task, the senseless mockery of tendering her hand to the man of broken vows and dishonored faith, before the law can interpose that feeble, partial remedy which it affords in her behalf? Happily, it demands no such useless sacrifice of sense to sound, or substance to mere form.

It is enough that there had been a promise, and a refusal inconsistent with the promise. When this appears, an offer or request is wholly unnecessary. 1 Chitty's Pl. 363; *Gough* v. *Farr*, 14 Eng. Com. Law R. 294. This view of the law disposes of the objection made to the fifth count in the declaration, and shows, that in the refusal of the Court to direct the jury to disregard the same as being faulty, there was no error.

The count is upon a promise to marry on request. It avers a readiness and willingness on the part of the defendant to marry; and contains a special allegation that on the 20th of March, A. D. 1844, the plaintiff positively, wrongfully and injuriously refused and wholly declined to marry, contrary to his promise and undertaking, &c.

It is the opinion of the Court, both upon authority and the reason of the case, that this count is good in substance, and that the Court decided correctly in refusing to direct the jury to disregard it.

I will now briefly notice several of the instructions which

were given and refused by the Court, together with their application to the respective counts of the declaration. The principal objection taken to the instructions asked by the plaintiff below, is to the third, upon the ground that it is general and applicable to all the counts, and that this instruction is erroneous when applied to the third count of the declaration, for the reason that this count is upon a special contract made and to be performed at a certain time.

We regard this objection as a sort of special demurrer to the instruction, for the first time attempted to be set up, and insisted upon in this Court. No such reason appears to have been urged against it in the Court below. *There,* the objection and exception was general, that the proposition was illegal. *Here,* the exception is special, that it is inapplicable to a particular state of facts, about which, as I shall hereafter show, there was no evidence or controversy. The instruction was general, it was a correct proposition of law, and applicable to several counts of the declaration and to the evidence given under them. It would be a refinement upon technicality indeed, and would amount to a denial of justice if we were to reverse a judgment upon such grounds.

I shall pass over the first, second, fourth and fifth instructions asked by the plaintiff's counsel, and refused by the Court, with the single remark, that they were all properly refused for the reason that they attempt to make the time of the promise, request, or offer on the part of the defendant material, when in law, the same is immaterial.

Upon the question presented by the refusal of the Circuit Court to give the third instruction asked by the appellant's counsel, we have had considerable difficulty in arriving at a conclusion. We have not finally done so without some hesitation.

The proposition was strictly a legal one, and directly appropriate to the third count of the declaration, to which alone it was sought to be applied. The authorities upon this point have been carefully and critically examined.

It is no new doctrine that a new trial will not be granted or judgment reversed on error, on account of the Judge who

tried the cause having given improper or withheld proper instructions from the jury.

To show the propriety of this remark, and to collect authorities from which to deduce a general rule applicable to this and cases of like character, I will proceed to make extracts and references to several decisions, which have heretofore been made, bearing upon this question.

When the objection merely is, that what was proved by one witness could have been proved by two, there being no denial of the fact which he was called to prove, there is no ground for the Court to interfere by granting a new trial. It is no ground for a new trial, that a witness, who was competent, was rejected upon the trial on the ground of incompetency, when the same fact was established by another witness. *Edwards* v. *Evans*, 3 East, 452.

The Court will not grant a new trial on a techical objection in point of law to the direction of the Judge, when they see that justice has been done, even though such misdirection may have swayed the jury. *Edmunds* v. *Mitchell*, 2 Term. R. 4.

Though the Judge may have made some little mistake in his directions to the jury, yet if justice be done, the Court ought not to interfere. The Court are always bound to determine how far the observation of the Judge was material and affected the merits of the case. 5 do. 425.

The case of *Seare* v. *Prentice*, 8 East, 348; is quite analogous on this point to the one now under consideration. The plaintiff employed the defendant, who was a shoemaker, as a surgeon, to reduce a dislocated limb. In his declaration, he complained that the defendant had *"negligently, ignorantly* and *unskilfully* performed the operation." The evidence showed *negligence*, but not want of skill. The Judge charged the jury that if there was no negligence, the defendant was not answerable for want of skill. The instruction was held erroneous, as mere matter of law; but there being no evidence of want of skill, it was considered that the opinion of the Judge did not affect the merits of the verdict upon the evidence in the cause, and a new trial was refused.

When a question on a misdirection arises, the inquiry is whether it was a material point and affected the merits of the case. The Court always make this inquiry, and they are bound, in the exercise of a sound discretion, to do so, otherwise there would be no end to new trials, and the remedy would be worse than the disease. *Fleming* v. *Gilbert*, 3 Johns. 528.

The Court are bound to judge how far the observation is material, as well as erroneous. *Doyle* v. *Lyon*, 10 do. 417.

It is undoubtedly true, that a judgment will not be reversed on account of an erroneous opinion expressed or decision made by the Court, where it clearly appears that the error did not or could not have affected the verdict or judgment. But this very position implies that we are to look beyond the letter of the exception into the case itself to ascertain what the effect of the error was. *Clark* v. *Dutcher*, 9 Cowen, 680.

The same doctrine has been repeatedly recognized by this Court in the cases of *Leigh* v. *Hodges*, 1 Scam. 18; *Gillet* v. *Sweat*, 1 Gilman, 475; *Hill* v. *Ward*, 2 do. 285.

From all these authorities the rule may be easily deduced, that a Court will not grant a new trial, or reverse a judgment on error, because of the admission of improper or the rejection of proper testimony, or for want of proper direction or misdirection of the Judge who tried the cause, provided the Court can clearly see, by an inspection of the whole record, that justice has been done, and that the error complained of could not have affected the merits of the cause, or influenced the verdict of the jury.

This being the rule, it remains to be seen whether the plaintiff here has been injured by the refusal of the Court to give this instruction, which we are free to admit was a legal one, and might, without any impropriety, have been given. Could the refusal to give this instruction have had any effect upon the verdict of the jury? We are clearly of the opinion that it could not for two reasons:

*First*, because there was no evidence whatever applicable to the count; and

*Second,* because there was sufficient evidence to warrant the finding under the other counts of the declaration.

If the instruction had been given, and the jury under it had found for the appellant upon this count, and, as they did find, against him upon the other counts, is there the least reason for supposing that the verdict would have been lessened, or in any respect changed, from what it was as returned by the jury? Is there the smallest probability that any sensible or conscientious jury would estimate the damages any greater for a breach of a promise to marry "the then next morning," than for a violation of an agreement to marry "upon request, or in a reasonable time;" or, that if it had been clearly shown that all three of the promises had been made and broken at the same time, instead of one, that it would have produced any different result? In either event the misfortune, the disappointment, the injury to the defendant would have been precisely the same.

It will be unnecessary to enter into any detailed statement of the evidence given upon the trial. It may, however, be proper to state generally that if the witnesses are credible, there is abundant testimony to sustain the promises and the alleged breaches upon the first, second and fifth counts of the declaration. The jury found their verdict generally upon these as well as upon the third count. We cannot entertain even a suspicion that the verdict would, or could have been a fraction more or less, if this count had been stricken from the record.

The qualifications given by the Court to the 11th and 12th instructions were strictly in accordance with law.

By the 11th, if given as asked, without explanation, the jury would necessarily have been obliged to have settled the legal proposition involved in the instruction, as to what damages justly arose out of a failure "to perform the contract." It was, therefore, not only proper, but important, that they should be advised by the Court, of the character of those damages which might thus "justly arise," and of the nature of the circumstances to be considered in estimating them.

This advice was correctly given in this instruction as modified by the Court.

We are unable to perceive any thing erroneous in the qualification to the 12th instruction. It directs the jury that, in their assessment of damages, they should disregard any injuries inflicted to the character of the plaintiff below, except so far as might result as a consequence from the nonperformance of the contract.

The next point in order as made by the plaintiff's counsel is, that the verdict is contrary to the evidence. And under this division of the question it has been strenuously urged, that the two most material witnesses, the father and brother of the appellee, were so impeached in their general characters for truth, that their testimony must be entirely disregarded in the consideration of the cause. If this position were admitted to be correct, we are by no means prepared to say, that there would not still be sufficient evidence remaining to warrant the finding of the jury. Contracts of this sort are not usually made in the presence of witnesses, but in private and secrecy between the parties. For this reason, the law has wisely provided, that they may reasonably be inferred from unusual and marked attentions, and long continued intimacy, and those manifestations of attachment and regard which usually precede their consummation.

Independent of the direct testimony of these two, several witnesses have testified that the visits and attentions of the plaintiff to the defendant, were constant and unremitted for a period exceeding four years; that they then ceased; and one witness also states, that about this time he declared his intention not to marry the appellant or any one else; which fact the witness shortly afterwards communicated to the defendant.

The request to marry, or the refusal, as well as the promise, may be proved by circumstances. *Martin* v. *Patton*, 3 Littell, 234. But it is not for this Court to decide, whatever may be their impression as to the weight of testimony upon the subject, that the two witnesses before referred to are unworthy of belief. That was peculiarly a question for the jury, with which we are not at liberty to interfere. They

were strongly corroborated by the other evidence in the case, and under all the circumstances, the jury might well have given credit to their statements, even if their general characters for truth were questionable, about which it is unnecessary that we should express any opinion.

The remaining question in this case is, whether the Circuit Court decided erroneously in overruling the motion for a new trial, for the reason that two of the jurors who sat upon the panel and tried the cause were aliens, and unnaturalized; and that this fact was unknown to the plaintiff until after the trial of the cause.

By the first section of chapter fifty eight of the Revised Statutes, it is provided that "all free white male taxable inhabitants in any of the counties in this State, being natural born citizens of the United States, or naturalized according to the Constitution and laws of the United States and of this State, between the ages of twenty one and sixty years, not being Judges of the Supreme or Circuit Court, County Commissioners, Judges of Probate, Clerks of the Circuit or County Commissioners' Court, Sheriffs, Coroners, Postmasters, licensed Attorneys, overseers of the highways, or occupiers of mills, ferries, toll bridges or turnpike roads, being of sound mind and discretion, and not subject to any bodily infirmity amounting to a disability, shall be considered and deemed competent persons, (except in cases where legal disabilities may be imposed for the commission of some criminal offence,) to serve on all grand and petit juries in and for the bodies of their counties respectively."

This is the only statutory provision in our law relative to the qualification and competency of petit jurors. By this statute, as well as by the Common Law, unnaturalized aliens are disqualified to serve on juries. Although we are aware that it has been stated in the Opinion of the Court, delivered in the case of *Guykowski* v. *The People*, that "an alien is not capable in law to discharge the functions of a juror"; and that, in relation to their competency, a distinction is attempted to be drawn between such alien and others mentioned as exceptions in the Act; yet we find it extremely difficult to understand the force and reason of the argument,

or upon what grounds it is contended that in the one case there is an exemption merely from the performance of a duty, and in the other a total disqualification, so as to render a verdict an entire nullity.

All persons except aliens and others who are enumerated are declared to be competent jurors. The inference would seem to be, that those excepted are alike incompetent. We feel compelled to state that we are not satisfied with the decision to the extent to which it would seem to be carried by the argument, in the case of *Guykowski* v. *The People;* but, as it was made *in favorem vitæ*, in a case where a prisoner is presumed to stand on all his rights, and to waive nothing as applied to such a case, we are unwilling to disturb or overturn it.

Stability and uniformity of decisions in the judicial tribunals of the country conduce much to the welfare and happiness of the people for whose benefit alone governments are instituted and administered; and when a question has once been settled by solemn adjudication, and no positive *rule of law* has been violated or contravened, and no serious detriment is likely to arise prejudicial to the public interest, such adjudication ought to stand.

It is, however, requiring too much of mere men, even although they may for the time being occupy the position of Judges of the Courts, and as such, be entrusted with the authority of determining controversies between citizens, that they will not sometimes err in their opinions, and pronounce judgments which are fundamentally wrong, and which, if adhered to, would be productive of serious oppression and incalculable evil. Such cases have frequently occurred and will occur again with men of the profoundest learning and purest morals. But when they have arisen, it has never been considered more or less than an act of common honesty on the part of the tribunal where the error had been committed, to acknowledge and speedily reform it. Although we may doubt the correctness of the decision in the case before referred to, as a rule applicable to all cases for reasons and upon authorities which will hereafter be shown and referred to, still, inasmuch as in the particular case then under

consideration, and cases of a similar character, we cannot perceive that the docrine will be productive of any positive evil, and will throw an additional safeguard around the life of the citizen, which is one of the cherished objects of the law, and as the contrary has not to our knowledge, in such such a case, ever been expressly ruled, we have reluctantly concluded that it is not indispensable to hold that it is not law.

We feel called upon, however, by a sense of justice and propriety to limit the rule to capital cases. To extend it farther and permit its application to felonies of a lower grade, misdemeanors and civil suits, besides being opposed to the strong current of authorities both in England and this country, would be productive of much mischief, subvert the ends of justice, and transform the trial by jury from a bulwark of protection around the rights and interests of the citizen, into a piece of ingenious machinery to delude the people with the semblance without the reality of justice.

Let us look for a moment at the consequences of such a construction of the law as is here contended for, in ordinary civil cases in this country. It is well known, and part of the general history of the country, that our population is composed, to a considerable extent, of emigrants from almost all portions of the world. From the peculiar character of our institutions they become entitled, almost upon their arrival here, to many of the privileges of natural born and naturalized citizens; they readily accommodate themselves to our habits, laws and customs, and often with the knowledge and tacit assent of the parties are permitted to serve on juries; and thus to determine conflicting claims between citizen and citizen. They are declared by law to be incompetent to act in such capacity.

Judges, clerks, attorneys, millers, sheriffs, &c. &c. are alike exceptions to the number and kind who are by law held to be competent. But does it follow as a consequence that the verdict rendered by either is a nullity? That it cannot be the verdict of a jury? If so, then the party in a civil as well as a criminal case must be presumed to stand on all his rights, and to waive none of them, when in truth the con-

trary is the established and well settled doctrine of the law; and the presumption, in such cases is, that all rights are waived where the parties knowing, or having opportunity by the exercise of reasonable diligence and attention, of knowing them, omit or neglect to insist upon or assert them. A person, who upon bare inspection, is obviously and notoriously under the age of twenty one years is certainly as incompetent as an alien; he is not, according to the maxim of the Common Law, a "lawful man"; but if one were to be called upon a jury, and the parties were present and permitted him to try their cause without objection, I apprehend that a motion for a new trial upon that ground would receive but little favor or encouragement; that the verdict would not for such cause be void. Admit that it would be sustained upon the principle that the parties had consented, wherein would it differ, but in degree, from the present question?

What, in a civil cause, a party might by the exercise of reasonable and proper diligence ascertain, he will in law be presumed to know, and neglecting to avail himself of this legal knowledge at the proper time, he will not be permitted to take the chances of a verdict in his favor, and afterwards set up his own want of common prudence to avoid its consequences. If the doctrine contended for should obtain, it must often happen in this country that verdicts and judgments will be set aside and reversed, when there is not even a pretence that injustice has been done, at great and unnecessary expense to parties, besides opening wide the door for the practice of the grossest frauds, and the encouragement of countless perjuries.

I propose now, to show upon authority, that in misdemeanors and in civil cases at least, alienage and other disqualifications are grounds of challenge only, and cannot be assigned as reasons for new trials or to reverse a cause on error.

In the case of *Hill* v. *Yeates*, 12 East, 229, a son, who had not been summoned upon the jury, answered to his father's name and served in his place. Held to be no ground for setting aside the verdict.

The Court will not grant a new trial because one of the

Greenup *v.* Stoker.

jurors was related to one of the parties, for the other party, who might have challenged this person, ought to suffer for his neglect. 6 Bacon, 661.

In the case of *Simpson.*v. *Pitman,* 13 Ohio, 365, three of the jurors who sat on the trial, before they were impaneled, had repeatedly expressed opinions publicly as to the merits of the case; that the defendant was guilty, &c.; which the defendant did not learn until after the rendition of the verdict; and it was held to be cause of challenge only, and no ground for a new trial.

In *Egleston* v. *Smiley,* 17 Johns. 133, one of the jurors who tried the cause was a half uncle of the plaintiff's wife. The Court say that "the objection to the juror, even if it had been sufficient at the trial, is now too late to be made."

In Massachusetts, in a suit between the inhabitants of two towns, one of the jurors was chosen and drawn at a meeting of the inhabitants of Enfield, holden more than twenty days before the sitting of the Court at which the *venire facias* was returnable, contrary to the statute, and it was decided to be no ground for a new trial. 1 Pick. 40-1.

A verdict, either in a civil or criminal case, will not be set aside merely on the ground that one or more of the jurors had not the property qualifications, &c. required by law. If the objection is not raised when the juror is drawn, the parties are concluded, although the fact may not have come to their knowledge until after the trial. *People* v. *Jewett,* 6 Wend. 386.

It is admitted that these cases are not precisely, in point of form, the case now under consideration. They are, however, strictly analogous. In some, the jurors had been irregularly summoned or placed upon the panel; in others, they wanted the requisite qualifications to render them competent. Aliens are only incompetent. But there is a case which decides the very question which is here made. It is the case of the *King* v. *Sutton,* 15 Eng. Com. Law R. 253. The defendant was indicted for a conspiracy, and convicted. A motion was made for a new trial, upon the ground shown by the affidavit of a juror who sat upon the trial that he was an alien; and it farther appeared that this fact was unknown to

the defendant until after the trial. It was refused, upon the ground that this was cause of challenge only.

In Pennsylvania, alienage is a good cause of challenge, but it cannot be taken advantage of after verdict. *Hollingsworth* v. *Duane*, 4 Dall. 353.

Against the weight and strong current of these decisions, the Court has been cited to some paragraphs in 6 Bacon, 661, and to the case of *Briggs* v. *Town of Georgia*, 15 Verm. 61.

In Bacon, it is said, that "if there were good cause of challenge to one of the jurors; but this was not known, and consequently could not be taken advantage of upon the trial the Court will grant a new trial."

This doctrine, if it were intended to be general in its application, is in conflict with the whole current of the authorities in the English Courts, and even with the paragraph which I have before cited upon the same page of the same work. The cases referred to in support of it in Bacon are not within our reach. But we feel warranted in making the inference, that they must have been of a special character when, by the exercise of reasonable diligence, the cause of challenge could not have been ascertained before the trial.

The case in the Vermont Reports is against the doctrine, which we have under the authorities before cited, here advanced. It is, that the want of a freehold qualification in one of the jurors is a ground for a new trial, if the fact was unknown to the party making the motion at the time of trial. The only authorities cited by that Court in support of this decision are 1 Conn. R. 401; Cro. Car. 278.

Thus it will be seen, that the whole current and weight of the decisions are against the position assumed by the appellant here. From the peculiar position of our country, and the diversified national character of its inhabitants, there arises a strong, powerful, almost indispensable additional reason why his construction of the law should be rejected. From an attentive consideration of the whole case we are satisfied that no injustice has been done, and that there is no error in this record.

The judgment of the Circuit Court is affirmed, with costs.

*Judgment affirmed.*