# SUPREME COURT.

## DAVID S. BENNETT agt. JAMES M. MATTHEWS and JAMES D. WARREN.

A *circuit judge* has power, under the act of 1861, to draw an additional panel of jurors, before the commencement of the trial, from the *city box*, notwithstanding the provisions of the act of 1870, providing for an additional panel of thirty-six jurors to be drawn from the *county box*, by the circuit courts and courts of oyer and terminer, whenever a greater number of jurors are required, in addition to the regular panel.

While the authority contained in the act of 1870, is complete and ample for all ordinary emergencies, it has not been rendered mandatory upon the courts; but such additional jurors *may* be secured by the provisions of the act, leaving all other statutes upon the subject unrepealed and in full force.

Consequently a verdict rendered by a jury composed in part by those drawn under the act of 1861, does not render the verdict irregular.

The summoning of one juror by the sheriff, in place of and as a substitute for another of the same name, who was regularly drawn on the panel, although constituting a gross violation of duty on the part of the officer, is not, of itself, sufficient to render a verdict afterwards rendered by him and the other eleven jurors, who were regularly drawn and summoned invalid, where no actual injury or prejudice to the rights of the party are shown.

The verdict of a jury will not be set aside as irregular, because one of the jurors was an *alien*—an unnaturalized citizen, where the objection was not raised and proper challenge made when the jury was drawn. In such case, the parties are concluded, although the fact forming the objection, may not have come to their knowledge until after the trial.

*Erie Special Term, December*, 1870.

MOTION for new trial on the ground of irregularity.

WM. H. GREEN, WM. DORSHEIMER *and* E. C. SPRAGUE, *for plaintiff*.

A. P. LANING, *for defendants*.

DANIELS, J.—This action was tried at the circuit court, held in Erie county in the month of October, 1870,

and a verdict rendered in favor of the defendants. Before the trial was commenced an additional panel of twenty-four jurors was ordered to be drawn from the city box, to appear on the following day, by the justice presiding at such circuit. And according to the statement contained in the affidavit of one of the plaintiff's attorneys, these jurors were drawn from the city box in pursuance of such order by the clerk and the sheriff. This, it is now claimed on behalf of the plaintiff, constituted such an irregularity as to render the verdict afterwards rendered by the jury in part formed of the persons thus drawn, incapable of being legally maintained.

This position is supposed to be sustained by the provisions of the act passed on the twenty-seventh of April, 1870 (*Laws of* 1870, *vol.* 1, 952–3). By that act power was conferred upon circuit courts and courts of oyer and terminer to draw additional jurors, not exceeding thirty-six in number, whenever the attendance of a greater number was required than the laws previously relating to that subject had provided, should be drawn and summoned. When that authority is made use of for the purpose of supplying the requisite number of jurors, the statute peremptorily requires that the additional jurors shall be drawn from the box containing the jurors from which the petit jurors for the county partnership ; that he should have the entire and exclusive are drawn. And the jurors to be drawn from it are to be drawn by the clerk in the presence of the court, and afterwards summoned by the sheriff at least two days before the time when their attendance is required.

But while this authority is complete, and ample for all ordinary emergencies, it has not been rendered mandatory upon the courts. This appears by the phraseology made use of in the act. For that does not require that additional jurors shall be secured under its provisions, but merely provides that they may be so procured. Its object appears to have been simply to enlarge the powers previously con-

ferred upon the courts for the accomplishment of the same substantial result. And nothing is contained in the act manifesting a design to abrogate, repeal, or supersede the antecedent laws relating to the same subject matter. These considerations of themselves disclose sufficient reasons for construing the term " may," which the legislature has made use of in providing the authority according to its usual and popular signification, and for withholding from it the mandatory effect sometimes given to that word. In the present instance there is no public interest whatsoever dependent for its proper observance upon a different construction being given to that word, and no object indicated by the act requiring such a construction for its protection and support. It is not, therefore, within the authorities which in a certain class of cases have given to this term a mandatory import opposed to its common signification (*Mayor, &c.* agt. *Furze,* 3 *Hill,* 612-14-15), but within the principle requiring that exposition to be adopted, " which carries into effect the true intent and object of the legislature in the enactment," where " the ordinary meaning of the language must be presumed to be intended, unless it would manifestly defeat the object of the provisions" (*Minor* agt. *Mechanics' Bank, &c.,* 1 *Peters,* 46, 64-5).

This act contains no repealing clause whatsoever, and no allusion to the laws previously relating to the same subject. And it is in no way in conflict with either of such laws, as it has been already construed. For that reason it cannot be allowed to produce the repeal of either of those laws by implication. When a law is enacted, it is to be presumed that the body enacting it has in mind all the laws already existing relating to the same subject. And if the intention existed of changing or repealing such laws, either wholly, or partially, that such intention would be expressed in terms. Where that has not been done, the later act is not allowed to repeal the former, unless the

Bennett agt. Matthews.

later is so manifestly inconsistent with the laws previously existing as to bring one in direct conflict with the other. No such conflict can be found in the present instance. For there is nothing in the law of 1870 which in any way is incompatible with the exercise of the authority provided by previous statutes for supplying courts of record with additional numbers of jurors.

A construction of the act of 1870, which should render it mandatory and exclusive, would be attended with such a degree of inconvenience as to render the administration of justice impracticable in all those cases where any considerable portion of the public had pre-judged the merits of the controversy. For this act limits the number of jurors which may be drawn under its authority to thirty-six, while causes not unfrequently employ the attention of the courts where a much larger number of additional jurors are required to draw the number necessary for the purpose of forming a single jury. This circumstance of itself supplies a very cogent reason in support of the construction already given to this act. That construction should certainly be adopted when it is found to be consistent with the language of the law, which will render it useful in the administration of justice, rather than the one which would convert it into a source of embarrassment in the very proceeding it was designed to facilitate.

Under this construction, the presiding justice at the circuit had the power to order the additional jurors to be drawn from the city box, under the act of 1861, as he in the exercise of his discretion deemed that to be the most expedient course to be then pursued. By that law, the clerk has been required to provide a box, in which the names of all persons selected and returned as suitable persons to serve as jurors in the city or town where the courts are appointed by law to be held, are to be deposited. And from that box, the court may direct the sheriff, in its presence to draw such a number of names as shall be suffi-

cient to supply the jurors required for the transaction of its business (*Laws of* 1861, 528-9).

This was evidently the act under which the court intended to and did proceed in the present instance. For the jurors required were directed to be drawn from the city box, to appear the next day before the court. And this order was substantially complied with, for it appears that the additional jurors were drawn from that box by the clerk and the sheriff, in pursuance of its direction. The circumstance that the clerk aided the sheriff in the discharge of this duty, can in no manner be allowed to impair the regularity of the proceeding.

When the additional jurors were drawn, the name of John Fleming who was a qualified juror residing in the fourth ward, and returned as such, was found to be among them, and he was required to be summoned as one of such jurors for the court. But the officer who was charged with the performance of that duty, on account of some unexplained reason, failed to summon that person, and in his place summoned a person of the same name residing in the first ward of the city, who constituted one of the panel that tried the present action. This substitution of one person in place of another by the officer, who was directed to summon duly the persons who had been drawn, undoubtedly constituted a gross violation of duty on his part. But that of itself is not sufficient to render the verdict, afterwards rendered by him, and the other eleven jurors who were regularly summoned and drawn, invalid. To produce that result, it should have been shown that the plaintiff was actually injured or prejudiced in his rights by this misconduct of the officer, nothing indicating that such was the fact, has been presented by the papers produced in support of this motion. The rule upon that subject, in the case of the *People* agt. *Ransom*, was stated to be, " that any mere informality or mistake of an officer in drawing a jury, or any irregularity or misconduct in the jurors themselves, will not be a suffi-

cient ground for setting aside a verdict, either in a criminal
or civil case, where the court are satisfied that the party
complaining has not, or could not have, sustained any in-
jury from it," (7 *Wend.*, 418, 424). And it would be
clearly improper to assume that any injury had been pro-
duced by the misconduct of the officer, when nothing of
that kind was affirmed by the party complaining. It has
not been even claimed that the verdict would have been
different if this person had not been upon the jury, and the
John Fleming actually drawn had occupied his seat.

This case differs from that of *The King* agt. *Tremaine* (16
*Eng. Com. Law*, 318-19), in the circumstance that the
person who there took his seat in the jury box, when
another and different person was named and called, had not
in fact been summoned to attend the court as a juror. And
particular emphasis is given to that circumstance by
SUTHERLAND, J., in reviewing the very similar case of *Hill*
agt. *Yates* (12 *East.*, 229), where a conclusion was reached
which is somewhat at variance with that declared in *The
King* agt. *Tremaine*. (7 *Wend.*, 424). In both those cases
the person whose presence was complained of, fraudulently
imposed himself upon the court, as the person who had
been summoned by the officer. But in the present case,
the person was summoned, and appeared before the court
in pursuance of the summons. As between himself and the
public authorities, his attendance was regular. It was the
fault of the officer not of the person complying with the
summons, that he presented himself before the court and
became a member of the panel in this cause. And under
the principle already mentioned, the verdict for that reason
cannot be disturbed, see also to the same effect, *Cole* agt.
*Perry* (6 *Cow.*, 584; 3d *R. S.*, 5th ed. 723, *sub.* 14 *of* § 7).

The remaining ground upon which the motion to set
aside the verdict has been placed is, the fact that the John
Fleming who was summoned and drawn upon the jury, was
at that time an unnaturalized alien. By a statute of this

state such persons are declared incapable of serving upon any jury (3d R. S. 5th ed., 8, § 42). This incapacity formed a good ground of challenge to this juror for what in law is known as principal cause *propter defectum.* And if he had been objected to in that manner, he would without doubt, have been excluded from the jury. Among these causes of challenge to jurors, are the defects of alienage, old age, infancy, and the want of property, or other qualification required by law (1 *Burrill's Pr.,* 454). This as well as the other forms of challenges to jurors, is required by the well settled rules of practice to be taken before the juror whom it may be proposed to challenge has been sworn, or taken his seat in the jury box. Objections of that character are preliminary in their nature, and are, therefore, required to be taken before the actual trial of the cause has been commenced. If not taken at that time, the right after- wards to object is so far waived as to render the disposition of the objection afterwards very much a matter of discre tion (1 *Burrell's Pr.,* 468). And that discretion is only exercised for the purpose of setting aside the verdict where it can be made to appear that positive injustice may be prevented by doing so.

Hence, the verdict of a jury will not be set aside because one or more of the jurors did not possess all the qualifica- tions required by law, in order to render them competent to serve. Upon this subject, SUTHERLAND, J., in the case of the *People* agt. *Jewett* (6 *Wend.,* 388-9), declared his con- clusion to be that, " a verdict either in a civil or criminal case, would not be set aside merely on the ground that one or more of the jurors had not the property qualification required by law. It very frequently occurs that such mis- takes are made in the panel and jurors undoubtedly some- times serve without the requisite legal qualifications. But if the objection is not raised when the jury is drawn, the parties are concluded although the fact may not have come to their knowledge until after the trial." In the case of

*Secord* agt. *Burling* (1 *How.*, 175), one of the jurors was over sixty years of age, and a motion was made to set aside the verdict for that reason. But the court held that the objection came too late and declined to interfere. In *Clark* agt. *Van Vranken* (20 *Barb.*, 278), the county court reversed a justice's judgment because three of the jurors in the cause did not possess the property qualification required by law. But a general term of this court reversed the judgment of the county court, and affirmed that of the justice, holding that the objection was waived, because it was not taken before the trial, even though the defendant had failed to appear when the cause was called and tried, (*Id.*, 281). The rule is the same in criminal cases (*Barb. Crim. Law,* 354).

Any different rule would introduce very great instability, and uncertainty in the administration of the law. If the present motion could succeed, the court with equal propriety could be asked to set aside every verdict in criminal and civil causes, rendered at the courts where this man was a juror, and in which he concurred. And the same result would attend the trial of causes where tales jurors may be summoned by the sheriff, either from the bystanders, or the county at large, if an unnaturalized alien happen to be found among the number. For the courts still possess the power of supplying jurors in that manner notwith standing the peculiar phraseology of the act of 1861, vol. 1, laws of 1861, 1282-3.

In addition to the reasons already assigned, the legislature has provided that "the court shall in every stage of action, disregard any error or defect in the pleadings, or proceedings which shall not affect the substantial rights of the adverse party" (*Code* § 176). No such right was affected by the irregularity complained of in this case, for the controversy was heard and decided by the requisite number of jurors.

The result of these various considerations is that the motion to set aside the verdict must be denied, with costs.