## THOMAS P. QUEENAN v. TERRITORY OF OKLAHOMA.

(Filed September 4, 1901.)

1. **CONSTITUTION—Application.** The provisions in the constitution of the United States in relation to trials by jury for crimes, and to criminal prosecutions, apply to the territories of the United States.

2. **JURY DEFINED.** The jury, within the meaning of the federal constitution, and the sixth amendment thereto, is a jury constituted, as it was at common law, of twelve persons, neither more nor less.

3. **CONSTITUTIONAL AND STATUTORY RIGHTS—Waiver.** A constitutional right cannot be waived by the defendant or his counsel in a felony case; but, a statutory right may be waived. The right of the defendant to have a trial by a jury of twelve persons is a constitutional right which the defendant cannot waive. It is not within the power of one accused of a felony, by consent expressly given or by his silence, to authorize a jury of less than twelve persons to pass upon his guilt or innocence.

4. **JUROR—Disqualification—Challenge** At common law the fact that a juror was an alien, or that he has been convicted of a crime, were causes of challenge *proper defectum*; and there was no distinction at common law between a person who was convicted of a felony and one who was an alien. Most of the states of the union have statutes which make such disqualifications of a juror a cause of challenge. And these statutes are but declaratory of the common law.

5. **SAME.** Where one of the jurors in a trial for murder had been convicted of a felony, although cause of challenge *proper defectum* is not a denial of due process of law, or of the equal protection of the laws to the person convicted, within the meaning of the federal constitution.

6. **DISQUALIFICATION OF JUROR—Waiver.** A known ground of disqualification to a juror, before or during the progress of the trial, is waived by withholding it, or refusing or declining to raise the objection until after verdict.

7. **JUROR—Disqualification—Limitations.** In the absence of an express statute making a juror incompetent who has been

convicted of a criminal offense punishable by imprisonment in a penitentiary of another state, such conviction and sentence can have no effect by way of penalty, or of personal disability or disqualification beyond the limits of the state in which the judgment was rendered.

8. SPECIAL VENIRE—Irregularities—Objections. Where irregularities occur in the summoning of a special venire, it is incumbent upon the defendant, or his counsel, to interpose his objection at the proper time, and it is waived if it is raised for the first time after verdict.

9. JURY—Impaneling—Irregularities. The provisions of our statute in relation to the selecting, summoning and impaneling of a jury are not mandatory but merely directory, and hence mere irregularities will not be deemed prejudicial, unless it is clearly shown that some injury has resulted therefrom.

10. INSANITY—Non-Expert Witness. On a trial for murder, where insanity is interposed as a defense, a non-expert witness, after testifying to the acts, conduct and appearance of the defendant, may state whether such acts, conduct and appearance impressed him as being rational or irrational.

11. SAME—Proper Evidence. On a trial for murder where the defense of insanity is interposed, the important issue to be determined is the sanity or insanity of the defendant at the time of the commission of the homicide; but, is it permissible to receive evidence as to the condition of his mind both before and for a reasonable period after that time, as tending to show his mental condition at the time of the homicide.

12. INSTRUCTIONS—What proper. We have examined instruction numbered five which is assigned as error, and we think it fairly and correctly states the law applicable to this case, and comes within the rule announced by this court in *Maas v. Territory*, 63 Pac. 960. And there was no error in refusing to give instruction number 4 1-2, which was offered by the defendant, since said instruction was embodied in the general charge of the court. (Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before Benj. F. Burwell, Trial Judge.*

*J. W. Johnson* and *Howard & Ames,* for plaintiff in error.

*J. C. Strang, Attorney General, W. R. Taylor, County*

*Attorney, H. B. Mitchell, T. G. Chambers* and *M. Fulton,* for defendant in error.

Opinion of the court by

HAINER, J.:   The plaintiff in error, Thomas P. Queenan, was indicted, tried and convicted in the district court of Oklahoma county, for the crime of murder, and the jury fixed the punishment at death. The court, having duly considered and overruled the motion for new trial, and also in arrest of judgment, sentenced the plaintiff in error to be hanged, in accordance with the verdict of the jury. From this judgment and sentence the plaintiff in error brings this case here on appeal.

A number of errors are assigned and argued by counsel for plaintiff in error, which we will consider in the following order:

1.   It is first contended by plaintiff in error, that error was committed by the trial court for the reason that it refused to set aside the verdict of the jury on the ground of the disqualification of one of the jurors. It appears from the record in this case, that one of the jurors upon his *voir dire,* in answer to the question whether he had ever been convicted of a felony under the laws of the United States or any state or territory, answered in the negative. The case proceeded to trial, and after the testimony on behalf of the territory in chief had been introduced, and the defense had begun to offer its testimony, the juror, Harper, disclosed the fact that he had been convicted of grand larceny, and had served a term in the penitentiary in the state of Nebraska. The court immediately advised counsel for

defendant of this fact, and asked the defendant's counsel if they had any objections to make to the juror, Harper, and if they objected to proceeding with the trial of the case with the jury then impaneled. To this suggestion and inquiry of the court, Mr. Johnson, one of the counsel for the defendant, made the following response: "We have nothing to say, your Honor." The court in reply to this statement of counsel used the following language: "In this connection, I want to say, in proceeding with this trial, that as soon as this matter was discovered by the court I at once advised counsel for both the prosecution and the defendant, in order that they might avail themselves of any rights they might have under it. I was of the opinion, and am still of the opinion, that if a challenge were properly interposed by either party and the fact properly presented, that it would be ground for excusing the juror. However, such facts are not before me in such a way that I can act upon. * * " It will thus be seen that counsel for defendant did not request the court to excuse the juror, Harper, and to impanel a new juror and proceed anew with the trial of the cause, nor was any objection made to the trial proceeding with the jury as thus constituted. But, after the trial was completed and after the defendant was found guilty as charged in the indictment, a motion for new trial was made upon the ground, among others, that the juror, Harper, was disqualified, for the reason that he had been convicted of a felony in the state of Nebraska, and therefore the verdict should be set aside. It will thus be seen that the objection made to the disqualification of one of the jurors was made for the first time after the verdict was returned, and upon motion for new trial. We think that upon principle and authority this objection comes too late.

The defendant by failing or neglecting to object to the dis-qualification of the juror until after the verdict was rend-ered notwithstanding he had knowledge of such fact during the progress of the trial, clearly waived any objection to the disqualification of such juror.

But it is earnestly contended by the able counsel for the plaintiff in error that this is a constitutional or funda-mental right, which cannot be waived by the defendant. We think this contention is unsound.

Article 3, section 2, of the constitution of the United States provides:

"The trial of all crimes, except in cases of impeach-ment, shall be by jury; and such trial shall be held in the state where the said crime shall have been committed; but when not committed within any state, the trial shall be had at such place or places as the congress may by law have directed."

And by the sixth amendment to the constitution it is declared:

"In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascer-tained by law; and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining wit-nesses in his favor; and to have the assistance of counsel for his defense."

That the provisions of the federal constitution in re-

spect to the right of trial by jury in suits at common law apply to the territories of the United States is no longer an open question. The doctrine is also well established by decisions of the supreme court of the United States that the provisions of the federal constitution relating to trial ·by jury for crimes, and to criminal prosecutions, apply to the territories of the United States. (*Thompson v. State of Utah,* 170 U. S. 345; *Callan v. Wilson,* 127 U. S. 540; *Reynolds v. United States,* 98 U. S. 145.)

And the jury referred to in the federal constitution and the sixth amendment thereto, is the jury constituted as it was at common law, of twelve persons, neither more nor less. (*Thompson v. State, supra.*)

A constitutional right cannot be waived by the defendant or his counsel in a felony case. But a statutory right, such as the challenging of a juror for any particular cause, is a right or privilege which may be waived by the defendant or his counsel. The right of the defendant to have a. trial by a jury of twelve persons is a constitutional right,. which the defendant in this case could not waive. It is. not within the power of one accused of a felony, by consent. expressly given or by his silence, to authorize a jury of less than twelve persons to pass upon his guilt or innocence.

At common law the grounds for challenge were classified under four heads, as follows:

(1) *Propter honoris respectum;* as if a lord of parliament be impanelled on a jury, he may be challenged by either party, or he may challenge himself.

(2) *Propter defectum;* as if a juryman be an alien born, this is defect of birth.

(3) *Propter affectum;* as for suspicion of bias or partiality. This may be either a principal challenge, or *to the favour*.

(4) Challenges *propter defectum,* are for some misdemeanor or crime, that affects the juror's credit and renders him infamous. As for conviction of treason, felony, perjury, or conspiracy. (2 Cooley's Blackstone [3rd ed.] 360.)

It will thus be seen that at common law the fact that a juror was an alien, or that he entertained bias or prejudice, or that he was an infant, or that he was not a freeholder, or that he was convicted of a felony, were good grounds for a challenge, and there was no distinction at common law between a person who was convicted of a felony and one who was an alien, or who entertained bias or prejudice against the accused. Most states of the union have statutes which make disqualifications of a juror a ground of challenge for cause. These statutes are but declaratory of the common law. The fact that a juror is an alien, or that he is an infant, or that he has been convicted of a felony, or that he is not a freeholder, or that he is not an elector, or that he entertains bias or prejudice in a case, are grounds for the exercise of a challenge for cause to such a juror, but the right to make a challenge for such cause may be waived. In other words, it is not a constitutional right or privilege, that the accused cannot waive, but it is a common law, or statutory right of challenge. The right of the accused in all criminal prosecutions under federal constitu-

tion to a speedy and public trial by an impartial jury of twelve persons, to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, and to be present during the progress of the entire trial, are constitutional rights, which are not in the power of one accused of a felony, by consent expressly given or by his silence, to waive. The power to fix the qualifications of jurors is not a constitutional right, but has always been considered and regarded as a power which has been delegated to the various states and territories of the union. And this power has been exercised by the various states and territories of the union. And hence, one placed on trial for a felony, may waive any statutory right or privilege which does not contravene any constitutional or fundamental right. It must, therefore, follow that the right to challenge a juror on account of his incompetency, by reason of the fact that he had been convicted of a felony, may be waived by a person who is on trial for a felony, and even in a capital case. And this conclusion of ours is sustained by the great weight of modern authorities. In fact, it has been unheld by the supreme court of the United States, and by nearly every state in the union, with the exception of Michigan, and one or two other states.

In *Kohl v. Lehlback*, 160 U. S. 293, it is held that "where one of the jurors in a criminal case was an alien, although cause of challenge, is not a denial of due process of law, or of equal protection of the laws to the person convicted." And, "The defect is not fundamental as affecting the substantial rights of the accused, and the verdict is not void for want of power to render it."

In discussing this subject, the learned chief justice of the supreme court of the United States said:

"The line of argument seems to be that by the common law as obtaining in New Jersey an alien was disqualified from serving on a jury; that the disqualification was absolute; that the common law could not be changed in that particular under the state constitution; that the proviso was therefore void; and that, if an alien sat upon a jury, the common law right of trial by jury would have been invaded. So far as the petition shows, this contention may have been disposed of adversely to petitioner by the state courts; and moreover, we are of the opinion that in itself it cannot be sustained as involving an infraction of the constitution of the United States.

"In *Hollingworth v. Duane,* reported in Wall. C. C. 147, and also, but imperfectly, in 4 Dall. 353, (1:864), it was held by the circuit court of the United States for the eastern district of Pennsylvania, at October term, 1801, that alienage of a juror is cause for challenge, but is not *per se* sufficient to set aside a verdict, and this whether the party complaining knew of the fact or not; and that this was the rule at common law as shown by authorities cited from the year books and otherwise.

"In *Wassum v. Feeney,* 121 Mass. 93, 23 Am. Rep. 258, the supreme judicial court of Massachusetts held that a 'verdict will not be set aside because one of the jurors was an infant, where his name was on the list of jurors returned and impaneled, though the losing party did not know of the infancy until after the verdict.' And Mr. Justice Gray, then chief justice of Massachusetts, delivering the opinion, said: 'When a party has had an opportunity of challenge, no disqualification of a juror entitles him to a new trial after verdict. This convenient and necessary rule has been applied by this court, not only to a juror

disqualified by interest or relation  (*Jeffries v. Randall,* 14 Mass 205; *Woodward v. Dean,* 113 Mass. 297), but, even in a capital case, to a juror who was not of the country or vicinage, as required by the constitution, declaration of rights, art. 13; Anonymous, cited by Jackson, J., in 1 Pick. 41, 42.  The same rule has been applied by other courts to disqualification by reason of alienage, although not in fact known until after verdict.  (*Hollingsworth v. Duane,* 4 U. S. Dall. 353, Wall. C. C. 147; *State v. Quarrel,* 2 Bay 150, 1 Am. Dec. 637; *Presbury v. Com.,* 9 Dana 203; *Rex v. Sutton,* 8 Barn & C. 417, same case nom. *Rex v. Despard,* 2 Man & R., 406.)  *In re Chelsea Waterworks Co.,* 10 Exch. 731, Baron Parke said: 'In the case of trial by jury *de medietate linqual,* which by the 27th section of the jury act is expressly reserved to an alien, he may not know whether proper persons are on the jury; yet if he was found guilty, and sentenced to death, the verdict would not be set aside because he was tried by improper persons, for he ought to have challenged them.'  (See also case of Juryman, 12 East 231, note; *Hill v. Yates,* 12 East, 229.)

"The great weight of authority is to that effect, though there are a few cases to the contrary.  Thus in *Guykowski v. People,* 2 Ill. 476, it was held that a new trial should be granted because one of the jurors was an alien when sworn, of which fact the defendant was ignorant at the time; but in *Greenup v. Stoker,* 8 Ill. 202, the supreme court of Illinois, through Purple, J., reluctantly concluded that it was not indispensible to hold that that case was not the law, but limited it application to capital cases; and in *Chase v. People,* 40 Ill. 352, it was finally overruled.  Mr. Justice Breese spoke for the court, and it was held that alienage in a juror was not a positive disqualification, but ground of exemption or of challenge, and nothing more.

"It has been held that, under the constitution of New York, the defendant in a capital case cannot consent to be

tried by less than a jury of twelve men, (*Cancemi v. People,* 18 N. Y. 128), and that, under the constitution of California, a law authorizing a change of the place of trial of a criminal action to another county than that where the crime was committed, on application of the prosecution without defendant's consent, was invalid. (*People v. Powell,* 87 Cal. 348, 11 L. R. A. 75.) But in either of these cases was it intimated that objection to individual jurors could not be waived by the accused, or that trial by jury would be violated if persons who were open to challenge happened to be impaneled. The disqualification of alienage is cause of challenge *propter defectum,* on account of personal objection, and if, voluntarily or through negligence or want of knowledge, such objection fails to be insisted on, the conclusion that the judgment is thereby invalidated is wholly inadmissible. The defect is not fundamental as affecting the substantial rights of the accused, and the verdict is not void for want of power to render it. (*United States v. Gale.* 109 U. S. 65, 72 27: 857, 859)."

In the case of *Alexander v. United States,* 138 U. S. 353, it was held that, "it is the duty of counsel seasonably to call the attention of the court to any error in impaneling the jury, in admitting testimony, or in any other proceedings during the trial by which his rights are prejudiced, and in case of an adverse ruling to note an exception."

In case of *King v. Sutton,* 8 B. & C. 417, it was held that "alienage is a ground of challenge to a juror, and if the party has an opportunity of making his challenge and neglects it he cannot afterwards make the objection."

In the case of *Chase v. The People,* 40 Ill. 352, it was held that "alienage in a juror is not a positive disqualification, it simply enables him to excuse himself if he chooses

to claim exception, or it is a ground of challenge and nothing more."

In *Costly v. State,* 19 Ga. 614, it was held that, "the non-residence of a juror, being a cause of challenge *propter defectum,* can and consequently must be made by the prisoner before the juror is sworn, and it makes no difference whether such want of qualification was known or unknown at the time the juror was sworn."

In *State v. Bunger,* 14 La. An. 465, it is said: "Where a juror can be challenged for cause, the right must be exercised before the juror is sworn; and a verdict cures the defect."

In *State v. Patrick,* 3 Jones (N. C.) L. 443, it is said: "It is too late after the juror has been taken and accepted by the prisoner, and has served on the trial, to except him for incompetency."

So, it has been held that where the facts are known, an objection to the competency of the juror comes too late if it is made after verdict, even in capital cases. (*People v. Coffman,* 24 Cal. 230; *Lisle v. State,* 6 Mo. 426; *Keener v. State,* 18 Ga. 194.)

In *State v. Powers,* 10 Ore. 145, it was held that the disqualification of a juror in a capital case is unavailable after verdict.

In *George v. State,* 29 Miss. 580, a motion for new trial in a capital case was denied, in which it was found after verdict that one of the jurors was an alien.

In *State v. Jackson,* 27 Kan. 581, it was held that:

"In a criminal prosecution for murder in the first degree, it was ascertained after the verdict was rendered, that two of the jurors had voluntarily borne arms against the government of the United States, during the war of the rebellion, and their consequent disabilities had not been removed, and therefore that they were not electors of the state of Kansas, and therefore were not proper persons to serve as jurors. No objection had previously been made to these jurors serving in the case, and it does not appear that any effort had been made, previous to the rendering of the verdict, to ascertain whether they were competent jurors or not. After the verdict was rendered, and the defendant found guilty of murder in the first degree, as charged in the information, the defendant then moved for a new trial, and also in arrest of judgment, because of incompetency of these two jurors. *Held,* That the fact that these two jurors were not electors was not an absolute disqualification, but only a ground for challenge; that their disqualification would have been a proper ground for discharging them from the jury before they were sworn, but it is not sufficient ground for granting the defendant a new trial, or for arresting the judgment after the verdict was rendered; and where no objection is made because of such disqualification until after the verdict is rendered, the objection is made too late."

In *State v. Ready,* 26 Pac. 58, it was held by the supreme court of Kansas that:

"When a juror examined on his *voir dire,* said that he had not served upon a jury in any court of record in this state within twelve months, and it is shown that he had, and the fact of the prior service of the juror was not known to the appellant until after the trial, the fact of the prior service of the juror is not sufficient to grant him a new trial. The case of *State v. Jackson,* 27 Kan. 581, followed."

And it was further held that:

"Where an objection to the incompetency of a juror, namely, that he has served as a juror in the same court in another case within the preceding year, is first raised after verdict, and the party objecting fails to show that the ground of challenge was unknown to him and his counsel when the juror was accepted, or that he would have exer-. cised his right of challenge if he had known that the cause therefor existed, or that he has suffered any prejudice by the retention of the juror, the objection will not be available for the purpose of obtaining a new trial."

In the case of *Stewart v. The State,* 15 Ohio St. 159, it is said:

"The plaintiff in error, defendant below, was put on trial for a penitentiary offense. After a jury had been impaneled and sworn, a juror arose in open court, and stated that he had been one of the grand jurors by whom the indictment had been found. Pertinent inquiries had been openly made upon this subject by counsel for the state, before the jury was sworn, to which the juror had failed to respond. The defendant's counsel, thereupon, in answer to an inquiry by the court, objected to proceeding in the trial with the jury then impaneled, and at the same time declining to waive any of the defendant's rights. The jury was thereupon discharged by the court, and another jury was impaneled in the usual mode, and the trial proceeded, the defendant objecting thereto. *Held,* That the discharge of the jury first impaneled was the necessary result of sustaining the objection interposed by the defendant him-' self, and so did not take place without his consent, but was an act done at his own instance, and would not therefore act as an acquittal, nor bar a further prosecution."

Mr. Justice Scott, in delivering the opinion of the court, said:

"Indeed looking to the whole colloquy which took place between the court and counsel, it is quite evident that the defendant desired to be regarded as consenting to nothing, which might, in any respect, prejudice his possible rights in any stage of the trial; and that he desired to secure for himself, by objecting to proceeding with the trial, the full right and benefit, in the event of his conviction, of a motion for a new trial, on account of the fact when first disclosed; and at the same time, if possible, to obtain all the chances of acquittal from the jury then impaneled, by refusing to consent to its discharge. He had a clear right to one fair and legal trial by an impartial jury, but his right to demand two trials, as a prerequisite to legal conviction and sentence, cannot be conceded. Nor can he reasonably be allowed to acquire such an advantage, by occupying, at the same time, two positions, utterly inconsistent with each other. There were but two possible courses of action open to the court; either to proceed with the trial before the jury then impaneled, or to discharge the jury. It was simply impossible not to do either; and a direct and absolute objection to the one, was necessarily a demand for the other. The jury was not discharged, until the defendant's counsel had been asked in open court, if they objected to proceeding in the trial with the jury then impaneled, and had replied explicitly that they did. The objection thus openly and directly made, was, (and, under the circumstances, perhaps properly), sustained by the court; and as a necessary and unavoidable result the discharge of the jury followed."

In vol. 17, p. 1161 of the American and English Ency. of Law, the rule is thus stated:

"Generally an objection to a juror for incompetency from any cause is waived if not made before verdict. The

disqualification of a juror has, however, been frequently made the ground of an application for a new trial or other relief after verdict, and the courts have not been in unison in their action on such applications. It is agreed that one who knew of a ground of disqualification before or during the trial cannot present such objection for the first time after verdict, and he must actually show the want of such knowledge on his part."

In vol. 12, p. 557, of the Encyclopaedia of Pleading and Practice, it is said:

"If rumors affecting the conduct of a juror are of so serious a character as to require a dismissal of the jury and the impaneling of another, it is incumbent upon counsel to move in the matter upon information of the prevalence of the rumor, and they cannot sit silently by and speculate upon the result."

Thompson in his work on Trials, sec. 114, lays down the following rule:

"A known cause of challenge is always waived by withholding it, and raising it as an objection after verdict; since such a practice is incompatible with the good faith and fair dealing which should characterize the administration of justice."

And again, the same author in the same section, in discussing this subject used the following language, which is clearly applicable to the facts in this case:

"For counsel to sit in silence when the court is embarrassed in the process of the impaneling a jury, declining to take action on the suggestions of the court, and answering that they have nothing to say and then raising the proper ob-

jection in case the verdict goes against them, is a trifling with the court and with the administration of justice, which will not be tolerated on the trial of the gravest offenses."

But is Harper disqualified from serving as a juror in this territory because he was convicted of a felony in the state of Nebraska? We think this question must be answered in the negative.

Section 3093 of the Statutes of 1893, provides as follows:

"All male citizens residing in any of the counties of this territory, having the qualifications of electors, and being over the age of twenty-one years, and of sound mind and discretion and not judges of the supreme court or district courts, clerks of the supreme or district courts, sheriffs, coroners, licensed attorneys engaged in practice, or any person licensed to sell liquor, or an habitual drunkard, or jailors, and not subject to any bodily infirmity amounting to disability, and who have not been convicted of a criminal offense punishable by imprisonment in the penitentiary, and not subject to disability for the commission of any offense which by special provision of law does or shall disqualify them, are and shall be competent persons to serve on all grand and petit juries within their counties or subdivisions respectively. * * *"

Section 2, chapter 13, of the Session Laws of 1899, in relation to the qualification of electors in this territory, provides as follows:

"The term 'qualified electors' within the meaning of this act, shall include all male persons of the age of twenty-one years or upwards belonging to either of the following

classes, who have resided in the territory for the period of six months, in the township sixty days and in the voting precinct thirty days next preceding any election:   First, citizens of the United States; Second, persons of foreign birth who shall have complied with the provisions of the laws of the United States on the subject of naturalization; Third, civilized persons of Indian descent, not members of any tribe."

Under section 5183 of our code of criminal procedure, a conviction for a felony is a general cause of challenge. A felony under our criminal code is defined to be a crime which is, or may be, punishable with death or by imprisonment in the territorial prison.   (Section 1841, Statutes of 1893.)

There is no express provision in our statute which renders a person disqualified from serving as a juror in this territory who was convicted of a crime in any other state or territory.   In the absence of an express statute making a juror incompetent who has been convicted of a criminal offense punishable by imprisonment in the penitentiary in another state, such conviction and sentence can have no effect by way of penalty or personal disability or disqualification beyond the limits of the state in which the judgment was rendered.   This is the rule laid down in the case of *Logan v. United States,* 144 U. S. 263, where Mr. Justice Gray, speaking for the court said:

"At common law, and on general principles of jurisprudence, when not controlled by express statute giving effect within the state which enacts it to a conviction and sentence in another state, such conviction and sentence can have no effect, by way of penalty, or of personal disability

or disqualification, beyond the limits of the state in which the judgment is rendered. (*Wisconsin v. Pelican Ins. Co.* 127 U. S. 265; *Com. v. Green,* 17 Mass. 515; *Sims v. Sims,* 75 N. Y. 466; *National Trust Co. v. Gleason,* 77 N. Y. 400; Story, Confl. L. section 92; 1 Greenl. Ev. section 376.")

It must, therefore, follow that the conviction of the juror, Harper, for a felony in the state of Nebraska, and his sentence to the penitentiary in said state, did not make him an incompetent juror in the trial of this case.

2. It is next contended that the court erred in refusing to grant a new trial for the reason that there were certain irregularities in the summoning of the special venire. There is no merit in this contention. It appears from the record that the court ordered a special venire of sixty jurors, and the sheriff made return of sixty-one jurors. No objection was made by counsel or defendant to the manner in which the special venire was ordered, or the return thereof by the sheriff, and the objection was raised for the first time on motion for new trial. There is no showing made that any injury resulted by reason of any irregularity in the summoning of the jury, or the return thereof by the sheriff. This court has held that the provisions of our statute in relation to the selecting, summoning and impaneling of a jury are not mandatory, but merly directory; and mere irregularities will not be deemed prejudicial, unless it is clearly shown that some injury has resulted therefrom. (*Huntley v. Territory,* 7 Okla. 60; *Harmon v. Territory,* 9 Okla. 313.)

In *Huntley v. Territory, supra,* it was said:

"Unless we could say that such error affected the sub-

stantial rights of the defendant, or might have affected his substantial rights injuriously, we would not be justified in disturbing the verdict."

But if irregularities occur in the summoning of a jury, it is incumbent upon the defendant to interpose his objection at the proper time, and we think it is waived if it is raised for the first time after verdict.

In *Perry v. State,* 45 S. W. 566, it was held by the court of criminal appeals of Texas that objections to the irregularities in regard to a special venire cannot be made for the first time after verdict.

3.    Error is assigned that the court refused to admit certain competent and relevant testimony of non-expert witnesses on behalf of the plaintiff in error. It is stated in the brief that the court refused to allow the witnesses, particularly John J. Queenan and Alice Welch, who were specially familiar with the defendant, to testify as to impressions made upon them by the conversation, conduct and appearance of the accused. We have carefully examined the testimony of these witnesses, and we do not think that this is a fair statement of the record. The record discloses that the court permitted these witnesses to testify as to the actions, conduct and appearance of the plaintiff in error, and to state how such actions, conduct and appearance impressed them, and permitted them to give their opinion as to whether they believed from such acts, conduct and appearance, the defendant was sane or insane. But we think the court properly refused to allow these witnesses to testify to a mere conclusion as that the conduct and appearance of the defendant had a "dreadful effect" or

"a horrible effect" upon them. Thus, the following question was propounded to the witness, Alice Welch, by counsel for defendant:

"Question. What effect did it have upon your mind at that time when you saw him? Answer. It had a dreadful effect."

The court instructed the jury not to consider this answer, it being a mere conclusion of the witness. The following question was then asked of the same witness:

"Ques. You may state, Miss Welch, whether upon this matter, his conduct and appearance, and what you heard and observed in all, how it impressed you as to whether or not his mind was affected or wrong, or whether he was insane?"

To this question the territory objected, which was overruled by the court.

"Ans. Yes, sir, it affected me, made an impression upon me that there was something wrong with his mind."

"Ques. How is that? Ans. Made an impression upon me that there was something wrong with his mind."

We think that the ruling of the court was very favorable to the defendant. The ruling of the court not only permitted the witnesses to testify as to the acts, conduct and appearances of the defendant, but it permitted the witnesses to give their opinions as to whether or not they believed the defendant to be sane or insane from such acts, conduct and appearance. We think the true and sound

rule is that non-expert witnesses after testifying to the acts, conduct and appearance of the accused as to his physical or mental condition, may state whether such acts, conduct and appearance impressed them as rational or irrational. But they cannot be permitted to give an opinion as to the general soundness or unsoundness of the mind of the accused, or as to his mental capacity. And this is the rule laid down by the court of appeals of New York, in a number of well considered cases.

In *People v. Strait*, 42 N. E. 1045, the court, in discussing this question said:

"The rule is that persons not experts, after testifying to facts and incidents in relation to a person tending to show soundness or unsoundness of mind, may testify to the impression produced upon them thereby, and as to whether the acts and declarations testified to impressed them as rational or irrational; but they cannot be permitted to give an opinion as to the general soundness or unsoundness of mind of the person, or as to his mental capacity (*Clapp v. Fullerton*, 34 N. Y. 190; *O'Brien v. People*, 36 N. Y. 276; *Hewlett v. Wood*, 55 N. Y. 634; *Holcomb v. Holcomb*, 95 N. Y. 316; *People v. Packenham*, 115 N. Y. 200, 21 N. E. 1035; *Paine v. Aldrich*, 133 N. Y. 544, 30 N. E. 725; *People v. Taylor*, 138 N. Y. 398, 34 N. E. 275.)"

4. Error is assigned, and it is claimed in the brief of counsel, that the court erred in confining the witnesses to opinions formed before the act was committed, and upon facts and circumstances prior to its occurrence. The record discloses that the court permitted the witnesses to detail the acts, conduct and appearance of the defendant not only before but after the homicide was committed. Thus, the

witness, Thurston, on behalf of the defendant was permitted to detail the appearance and conduct of the defendant shortly after the homicide was committed, as will appear from the following question which was propounded to him by counsel for defendant:

"Question. From all that you saw of him, in his conduct, your association with him, and your conversation with him, are you prepared to say whether you believed him at that time insane or not? Answer. I formed the opinion that he was not in his right mind.

"Ques. Formed it upon what you knew of him and his conduct, conversation and appearance? Ans. That is what I formed it from, from his general conduct and appearance."

By the court: "Gentlemen of the jury, this condition subsequent to the time of the homicide, and the opinion which he formed subsequent to that time based upon his acts subsequent to that time can be considered by you only for the purpose of tending to show as to whether or not he was insane at the time of the homicide."

We think the court, in this statement to the jury, announced the correct rule.

In vol. 16, p. 614, of the American and English Encyclopaedia of Law (second edition), the rule is thus stated:

"But in order to ascertain a person's mental condition at the time of the act in question, it is permissible to receive evidence of the condition of his mind for a reasonable period both before and after that time, especially where it is claimed that his disorder is of a continuing or permanent character, and this evidence should be considered by

the jury in connection with the other facts and circumstances of the case."

In *State v. Newman*, 47 Pac. 881, the following doctrine was announced by the supreme court of Kansas:

"Where the defense of insanity is interposed in a prosecution for murder, the important question is the mental capacity or incapacity of the defendant at the time of the homicide; but testimony as to his state of mind shortly before and shortly after the homicide may be received as tending to show his mental condition at the time of the homicide."

We are of the opinion there was no error committed by the trial court in the admission or exclusion of competent and relevant testimony.

5. It is next claimed that the court erred in giving instruction numbered five, which reads as follows:

"Homicide committed by one who has not sufficient knowledge and understanding to understand right from wrong, and to comprehend and understand the consequences of his act, is excusable for any act in reference to which his mind is in such weakened condition. But it is not every derangement of the mind that will excuse one for the commission of crime. If one has sufficient mind and understanding to know right from wrong regarding the particular act, and is able to comprehend and understand the consequence of such act, the law recognizes him as sane, and holds him responsible for such acts; and in this connection, if you should find beyond a reasonable doubt that the defendant took the life of Ella Queenan, as charged in the indictment, and that at the time of such homicide he knew and understood that it was wrong to take

her life, and was able to comprehend and understood the consequences of such act, then and in that event, it will be your duty to find the defendant guilty· of murder, as charged in the indictment. But, on the other hand, if you should find that he was not able to know that the act of taking her life was wrongful, and was not able to comprehend and understand the consequences of such act, then you should find the defendant not guilty."

We think that this instruction fairly and correctly states the law applicable to this case, and comes within the rule announced by this court in *Maas v. Territory,* 163 Pac. 960. And there was no error in refusing to give instruction numbered 4 1-2 which· was offered by the defendant, since said instruction was covered by the general charge of the court.

Upon a careful examination and consideration of the entire record we are of the opinion that no error was committed by the trial court prejudicial to the substantial rights of the plaintiff in error. The judgment of the district court is therefore affirmed.

Burwell, J., who presided in the court below, not sitting; all the other Justices concurring.