HENRY JOHN v. STATE.

No. A-10431.    Sept. 6, 1944.

(151 P. 2d 808.)

C. II. Baskin, of Holdenville, for plaintiff in error.

Randell S. Cobb, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and George S. Turner, Co. Atty. Hughes County, of Holdenville, for defendant in error.

BAREFOOT, J. Defendant, Henry John, was charged in the district court of Hughes county with the crime of assault with a dangerous weapon; was tried, convicted, and sentenced by the court to serve a term of five years in the penitentiary, and has appealed.

Defendant being unable to make bond, and now being confined in the State Penitentiary, his case has been advanced.

An unusual procedure was followed in this case. In addition to the charge of assault with a dangerous weapon, this defendant was charged with the crime of rape upon the same party with whom he was charged with the assault. Both charges were of the same time, and by agreement of counsel, the two cases were consolidated and tried together, with the result that defendant was found guilty in the case charging assault with a dangerous weapon, and sentenced, as above stated. A notation in the record reveals that the jury did not agree in the rape case. No question of the above procedure is raised in any manner in this appeal.

The first question presented by defendant for reversal is that three of the jurors who tried the defendant were not qualified jurors, and that therefore the defendant did not have a fair and impartial trial, as guaranteed him by the Bill of Rights, and as provided by the laws of the State of Oklahoma.

In his motion for new trial the defendant alleged that one of the jurors had assisted in securing evidence in the case at the time of the alleged offense; that one of them had previously been convicted of a felony; and that an-

other of the jurors had not been a resident of the county for the length of time required by law.

Defendant later filed an amended motion for new trial, in which he alleged that one of the jurors (the one alleged to have been previously convicted of a felony) had been separated from the others during the noon recess of the court, and had been seen talking with one of the state witnesses in the case.

It may be stated that the voir dire examination of the jurors does not appear in the record, and the first time these questions were raised was on the motion for new trial, and the amended motion.

The court heard the motion for new trial and the amended motion at the same time. Testimony of witnesses was heard, and the court overruled the motions. This was a matter clearly within the discretion of the trial court, and this discretion not having been abused, the ruling of the court will not be set aside on appeal.

When the motion for new trial was presented, evidence was offered to show that a person of the same name as one of the jurors had been convicted of a felony in the Northern Federal District of Texas, and had served a term in the Federal Penitentiary. At the time this was presented, counsel for defendant admitted that he knew that the juror had been convicted, but stated that he had forgotten about it. The question was not raised in any way at the time the jury was impaneled, nor at the trial. In the case of Queenan v. Territory, 11 Okla. 261, 71 P. 218, 223, 61 L. R. A. 324, affirmed 190 U. S. 548, 23 S. Ct. 762, 47 L. Ed. 1175, it is said:

"In the absence of an express statute making a juror incompetent who has been convicted of a criminal offense punishable by imprisonment in a penitentiary in another

state, such conviction and sentence can have no effect by the way of penalty or of personal disability or disqualification beyond the limits of the state in which the judgment was rendered."

Defendant claimed that one of the jurors, who had formerly lived in Hughes county, had moved away to Grady county, later returning to Hughes county, but had not resided there the last time for a period of six months. As above stated, this question was raised for the first time in the motion for new trial, and it is stated that the disqualification of this juror was unknown prior to his selection. No evidence was presented to substantiate the allegations with reference to this juror. There was nothing to show that the defendant was in any way prejudiced by reason of this juror serving upon the jury. The following cases are decisive of this proposition: Cooper v. State, 27 Okla. Cr. 278, 226 P. 1066; Perry v. State, 38 Okla. Cr. 202, 259 P. 657; Spratt v. State, 55 Okla. Cr. 1, 23 P. 2d 223; Ball v. State, 47 Okla. Cr. 145, 286 P. 808; Stouse v. State, 6 Okla. Cr. 415, 119 P. 271.

With reference to the one juror separating from the remainder, the record reveals that the jury had not been kept together during the trial, and that at the noon recess on the last day of the trial, the court sent the jury out to dinner and the bailiff accompanied them. The attorney for defendant claimed that when he returned to the courthouse he saw 11 of the jurors on the first floor, and that he saw one of the jurors on the third floor, talking to one of the state witnesses. He did not hear any part of the conversation. He placed the witness with whom the juror was alleged to have been talking on the stand when the motions for new trial were presented, and this witness testified that if he talked to any juror he did not know it, and that he never talked with any one about the case ex-

.cept the other witnesses. After he had seen this juror talking with the witness, counsel did not deem it of sufficient importance to call it to the attention of the court. The case had not been concluded, and other testimony was taken thereafter. Nor did he raise it in the motion for new trial, but it was first raised in the amended motion for new trial. There was no evidence offered to show that defendant was prejudiced. Under these facts, it occurs to us that the court did not err in overruling the motion and amended motion for new trial.

It is next contended that the court erred in permitting the county attorney to read an original statement made by one of the witnesses in the presence of the jury. In order to consider this assignment of error, it is necessary to consider some of the facts and circumstances surrounding this case.

The witness Raymond Bronner was a negro boy 17 years of age. The morning following the commission of this offense, he with five others, including the defendant, were arrested and placed in jail for investigation. All of them had been in a car with Emma Harjo, a full-blood Indian girl and the prosecuting witness, just before the alleged offense. Four of these parties, including Bronner, made statements to the county attorney, and in addition thereto testified at the preliminary hearing. In each of these statements, and by their testimony at the preliminary examination, these witnesses implicated the defendant as the party who had assaulted the prosecuting witness, Emma Harjo, by striking and raping her, and deliberately running over her body with a Ford automobile which he was driving, and in which they were riding, each testifying that he was present when this happened.

At the final trial, John Gilcrease and Bronner were placed upon the witness stand by the state, and Jack Har-

jo by the defense. Gilcrease testified at first that he did not see Emma Harjo after she had disappeared from the mail box, but when confronted with his testimony at the preliminary examination he testified that he was present at the time the defendant struck her and ran over her with the Ford car, after raping her. When the witness Bronner was placed on the stand by the state he denied that he was present at the time defendant struck Emma Harjo, and that they did not find her after she left the mail box. The county attorney then first presented his testimony at the preliminary examination, and asked him each question that was there asked him, and he stated that he had testified in that way at the preliminary, but that he was afraid because they had told him they would send him to the penitentiary. He was then confronted with the written statement he had made admitting that he was present at the time the defendant struck Emma Harjo, raped her, and then ran over her with the Ford automobile; and that defendant had asked him not to tell it, but to tell that he had stayed at the mail box, and that they did not find Emma Harjo.

When the county attorney made reference to the statement, counsel for defendant objected. The court overruled the objection, but evidently had reference to the question asked by the county attorney. The county attorney then read the statement in the presence of the jury, and further questioned the witness with reference thereto. Of course, the statement could not be introduced as original testimony, but in view of the facts as above stated, and that the witness was testifying directly contrary to the evidence he had given at the preliminary hearing and that contained in the written statement he had made to the county attorney, the county attorney had the right to plead surprise and cross-examine the witness with ref-

erence to both his testimony at the preliminary hearing and the written statement he had made.

The jury had the right to hear all of this evidence, and under the circumstances we do not think the defendant was prejudiced by the reading of the previous statement of this witness. Certainly there was a direct conflict in the evidence and the jury was entitled to hear all of the facts. For the very reason that these witnesses were attempting to change their testimony, the jury was entitled to all of the facts surrounding the transaction, in order to arrive at a correct verdict. Under the evidence, the jury was justified in coming to the conclusion that these witnesses had told the truth at the preliminary examination, and were now attempting to change their testimony, and make it favorable to the defendant.

We are therefore of the opinion that the defendant was not prejudiced by the reading of the written statement in the presence of the jury. The rule with reference to the introduction of voluntary and involuntary statements has no application in the instant case. There is not sufficient evidence that the statement made by this witness was an involuntary one.

We have examined the evidence given by the witness Dr. C. S. Wallace, and do not find that the same was incompetent. He only testified to the facts within his own knowledge.

The refusal of the court to permit the defense to offer in evidence newspaper accounts of the difficulty, which accounts purported to include statements made by the witnesses and by the county attorney to the reporters at the time witnesses were in jail, was proper.

Attached to defendant's amended motion for new trial was an affidavit of one Claude Jenkins. It is claimed

that this is newly discovered evidence. He was with certain parties who discovered the body of Emma Harjo lying in the road, and reported the same. It seems that this witness was well known to the defendant and his counsel. He had been called to the army. No effort had been made to secure this evidence prior to the trial. No motion for continuance was made. We have examined the affidavit and do not find therein any evidence which to our minds would change the result of this trial. This was a matter under the law that was within the discretion of the trial court, and certainly under the facts and circumstances, there was no abuse of discretion. It seemed to be the theory of the defense that the car in which this witness was riding was the one that ran over Emma Harjo, but this theory is denied in the affidavit.

The evidence in this case is highly conflicting. It is one of those cases where a jury who sees all of the witnesses on the stand and observes their demeanor, is in a much better position to pass upon the truth of their testimony than is an appellate court.

The prosecuting witness testified positively to the assault made upon her by the defendant. She positively identified him. In addition to the testimony of other witnesses, the bruises upon her body are strong corroboration of the evidence which she gave.

We have carefully examined this record, and are of the opinion that the jury came to the right conclusion in finding the defendant guilty in this case.

The judgment of the district court of Hughes county is therefore affirmed.

JONES, P. J., concurs. DOYLE, J., not participating.