Charles GANN, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13325.

Court of Criminal Appeals of Oklahoma.

Dec. 23, 1964.

Fite, Robinson & Summers, Muskogee, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

JOHNSON, Presiding Judge:

Charles Gann was convicted in the district court of Sequoyah County, Oklahoma, of the crime of assault and battery with a dangerous weapon with intent to do bodily injury, and sentenced to a term of three years in the state penitentiary. Appeal has been perfected to this Court.

This defendant was charged, with two other boys, Dale Boyd and Carl Matthews, with the crime of assault with intent to kill. It was alleged in the information, among other things, that these boys "did commit an assault with intent to kill upon the person of another, to-wit: William Borin, by then and there beating the said William Borin and pushing him down stairs and kicking him and stomping him with their feet, and hitting him with their fists, with the unlawful and felonious intent then and there upon the part of said defendants to kill the said William Borin, with such force and violence as was likely to produce death", etc.

A short statement of the evidence becomes necessary. William Borin, the prosecuting witness, 56 years of age, lived in an apartment on the second floor of a building referred to as the Remer Locker Building. Helen Long and a Mr. Grisham also lived in the building.

On the night of the difficulty Mr. Borin testified that he was in his apartment, and his car was parked on the well-lighted street in front of the building. He had undressed when he heard a noise like a hub cap falling on the pavement. He went to the window, and saw two boys near his car, with another car parked directly behind his. He watched a few minutes, and saw the boys lift the turtle back of their car and take out a jack, and start towards one of the wheels of his car. He called to them, and they got back in their car. Witness then dressed, and went out in the hall. The two boys he had seen and another one

were standing in the hall, near the back stairway. Witness testified that he walked up to them and asked, "What was you fixing to do to my car down there?" They denied having been near his car, and he told them he would not argue with them, but would go and call the law, turned and went down the hall to the steps leading down to the front door of the building. About the time he got to the head of the stairs he heard one of the boys say, "let's get him", and he was grabbed from the back around the neck. Witness fell and caught the banisters, one on each side. He testified that Dale Boyd then came up and beat him with a beer can, and that the other two boys were kicking and hitting him. Dale broke his hold on the banister they got him up and "kicked, pushed and stomped" him, and he fell part way down the steps. There was a landing half way down. The boys came on down, picked him up, "and did the same thing several times" and when witness was on the last step, they threw him out on the sidewalk. He stated that this defendant and Carl Matthews dragged him down the sidewalk to the corner of the building, and then down the side of the building to the rear, and placed him under the back steps. He testified that the third boy, Dale Boyd, was following and kicking and stomping on his feet. After they were behind the building, and had placed him under the back stairs, one of the boys said, "He has had enough", and the three of them left.

The prosecuting witness called for help, and Helen Long went to his aid. She secured the help of the other tenant, Mr. Grisham, and they got Mr. Borin up the steps to his apartment. The police were called, and an ambulance, and Borin was taken to a hospital in Fort Smith, Arkansas.

A police officer testified that he answered a call to the apartment house, and found Mr. Borin on his bed, with "blood and bruises all over his face", and that he had a broken leg. Another police officer testified to making an investigation the follow-

ing morning, and to finding what appeared to him to be blood on the floor at the top of the stairway, and down the staircase.

Helen Long testified that the three boys had been at her apartment and were standing near the back door, the one leading to the stairway at the back, when Mr. Borin came out and approached the boys. He said something about them "messing around his car" and told them he was going to get the police, and started toward the front stairs. She closed her door, but looked out again and the four were at the top of the steps, and she again closed her door. Fifteen or twenty minutes later she heard a groan, and found Mr. Borin on his hands and knees, under the back stairs. She got help and they carried Mr. Borin up to his room. That he had "a big, raw bloody place under one eye;" that he was "bloody all over", and one leg was broken.

Bill Young testified that he helped place Borin in the ambulance, and that he had blood all over his face, and was suffering with one leg. He testified to later finding a hub cap on the ground at the back of Mr. Borin's car, near the right wheel.

Dr. Kilpatrick of Fort Smith testified to treating Mr. Borin in the hospital and stated that he had received several injuries, and a fracture of the left hip, in the joint, and that he had bruises on his chest and face. He stated that the hip required open surgery of the hip joint, and "several threaded steel pins were used"; and that time for healing was not less than three months under the most favorable circumstances, and ordinarily around six months or even a year. That the bruises around the face and chest could be from fists or kicking, but the fracture of the hip joint was not likely to have been caused by such force.

The defendant testified in his own behalf, and produced one witness, Dale Boyd. They both testified that they had been together since 1:30 or 2 o'clock in the afternoon; that they had played snooker and visited several beer taverns, and each had drunk four or five beers during this time. Dale Boyd and his defendant visited Helen

Long in the Remer Locker Building and when they started to leave about 10 p. m. they could not get defendant's car started. While they were making an effort to do so, Mr. Borin called down and asked what they were doing around his car. They testified that they went back up to Helen Long's apartment to call Carl Matthews to come and give them a push to start the car. That Carl came up the back stairs, and they were just leaving when Mr. Borin came out of his room and accosted them. That none of them ever hit, kicked or pushed the complaining witness, and they did not see any of the others do so. That he fell down the steps. Dale Boyd testified that after Borin had fallen down the steps, Carl and Charles picked him up and dragged him around to the rear of the building. That he himself never did touch Borin. He testified that Carl ran up to Borin from behind, stopped him at the head of the stairs, there was a scuffle, and the prosecuting witness fell down the stairs. He admitted that he "pulled his arm", he didn't know why he did it, but he did not intend to hurt him. When they got to the bottom of the stairs, defendant and Carl picked him up, one under each arm, and dragged him to the corner of the building, where defendant turned him loose, and Carl dragged him on behind the building.

The defendant sets out six assignments of error in his brief. The Court feels that it need only discuss assignments five and six in detail. However, the Court would bring to the trial court's attention the fact that many of the errors complained of, had they been the only error committed, might possibly have been harmless, but when you put them all together, we feel the defendant has most certainly been prejudiced.

The State in its brief points out that they agree with the defendant's counsel in his fifth assignment. They say this is harmless error though. They further state the defendant's sixth assignment cannot be denied, but they say again, that if this be error, it is harmless error. How much

harmless error can be allowed before the defendant is prejudiced?

Defendant's fifth assignment of error is:

"The Court erred in failing to instruct on the lesser and included offense of simple assault and battery, after the defendant had requested the same."

In regard to this assignment, this Court in the case of Finley v. State, 84 Okl.Cr. 309, 181 P.2d 849 held that:

"A party is entitled to have the jury instructed on the law governing the issues according to his theory, providing such theory is tenable as a matter of law, or finds possible support in evidence."

And to the same effect see Johnson v. State, 84 Okl.Cr. 368, 182 P.2d 777; and the more recent case of Bell v. State, Okl.Cr., 381 P.2d 167, where we said:

"A defendant is entitled to an instruction covering his theory of defense, even though under the facts it may appear ridiculous, but even under such conditions the instructions must correctly state the law. If such an instruction cannot be prepared on defendant's theory within the provisions of law, then trial court is not required to so instruct."

In the instant case the defendant's only theory of defense was that he was guilty of a simple assault and battery, and nothing more. Therefore, the trial court should have given this instruction, as requested by the defendant, on simple assault and battery.

This instruction on simple assault and battery should have been given for another reason. The trial court has a duty to instruct on a lesser included offense, not on *any* lesser offense, but on *ALL* lesser included offenses.

In the early case of Clemons v. State, 8 Okl.Cr. 452, 128 P. 739, this Court, speaking through Judge Doyle, said:

"An assault with intent to kill necessarily includes an assault with intent to do bodily harm; for a person cannot be killed without bodily harm being done, and an assault and battery by means of a deadly weapon necessarily includes an assault with any sharp or dangerous weapon."

\* \* \* \* \* \*

"Under the statute, the trial court should submit the case to the jury for consideration upon every degree of assault which the evidence in any reasonable view of it suggests, and the instructions must be applicable to the testimony introduced upon the trial."

See also De Witt v. State, 58 Okl.Cr. 261, 52 P.2d 88.

The court's refusal to so instruct after being requested in writing to do so, deprived the defendant of a precious and fundamental right, and further violated the principle that the court must submit the case to the jury for consideration on every degree of assault which the evidence in any reasonable view suggests.

Defendant's sixth contention is:

"The court erred in failing to grant a new trial for the reason that one of the jurors had previously been convicted of a felony and served a term in the state penitentiary of Washington."

Defendant cites no authority in support of his contention, but quotes Tit. 38 O.S.A. § 28, which reads:

"All citizens residing in this State, having the qualifications of electors, of sound mind and discretion, of good moral character, \* \* \* and who have never been convicted of any infamous crime or served a term of imprisonment in any penitentiary for the commission of a felony, are competent jurors to serve on all grand and petit juries within their counties; \* \* \*."

The foregoing is the statute as amended in 1959.

In 1941, Tit. 38 O.S.A. § 10 read:

"All male citizens residing in this State, having the qualifications of electors, of sound mind and discretion, of good moral character, * * * and who have never been convicted of any infamous crime or served a term of imprisonment in any penitentiary for the commission of a felony * * *", etc.

The statute was amended in 1949, 1951, 1953 and 1959. The first amendment was in 1949 when the jury wheel was inaugurated.

The Attorney General in his brief states:

"Defendant in error is of the opinion that prior to the adoption of Title 38 in 1949, this assignment of error could have been disposed of by reference to two controlling Oklahoma criminal cases: Quinnan v. Territory, and John v. State. The latter case was decided in 1944. * * * This decision, of course, was rendered at a time, then, when 'conviction of a felony' was a disqualification and cause for challenge and before conviction of 'any infamous crime' or serving 'a term of imprisonment in any penitentiary for the commission of a felony' became disqualifications and causes for challenge."

However, Tit. 30 O.S.A. § 10 (1941) which was certainly the law in 1944 when the John case was decided, reads:

"All male citizens residing in this State, having the qualifications of electors, of sound mind and discretion, of good moral character, * * * and *who have never been convicted of any infamous crime or served a term of imprisonment in any penitentiary for the commission of a felony, are competent jurors* * * *". (Emphasis now supplied).

Queenan v. Territory, 11 Okl. 261, 71 P. 218, 61 L.R.A. 324, was decided September 4, 1901. Queenan was tried in Oklahoma County for murder, and the jury fixed his punishment at death. From the record it appears that one juror, Harper, in answer to the question by the court, whether he had ever been convicted of a felony under the laws of the United States or any state or territory, answered in the negative. The case proceeded to trial, and after the territory had rested and the defense had begun, the juror Harper disclosed that he had been convicted of grand larceny in Nebraska. The court immediately advised counsel for defendant, and asked if he had any objections to make to the juror, and if they objected to proceeding with the trial of the case. To this question counsel for defendant stated: "We have nothing to say, your honor." The court in reply to this statement of counsel, used the following language: " 'In this connection, I want to say, in proceeding with this trial, that as soon as this matter was discovered by the court I at once advised counsel for both the prosecution and the defendant, in order that they might avail themselves of any rights they might have under it.' " On motion for new trial one of the grounds named was that the juror Harper was disqualified for the reason that he had been convicted of a felony in the State of Nebraska. The court held that the objection came too late. The case was appealed to the Supreme Court and the Court, in affirming the case held:

"In the absence of an express statute making a juror incompetent who has been convicted of a criminal offense punishable by imprisonment in a penitentiary in another state, such conviction and sentence can have no effect by the way of penalty or of personal disability or disqualification beyond the limits of the state in which the judgment was rendered."

The case was affirmed, later appealed to the Supreme Court of the United States, and by that Court affirmed (Queenan v. Terr. of Okla., 190 U.S. 548, 23 S.Ct. 762, 47 L.Ed. 1175).

In John v. State, 79 Okl.Cr. 50, 151 P.2d 808 (1944), this Court held:

"In the absence of an express statute making a juror incompetent who has been convicted of a criminal offense punishable by imprisonment in a penitentiary of another state, such conviction and sentence can have no effect, by way of penalty or of personal disability or disqualification, beyond the limits of the state in which the judgment was rendered."

And, further:

"It is the duty of the defendant to question the jurors on their voir dire as to their qualifications; and if he fails to do so, he waives any objections on that point, even though the disqualification is unknown to him until after the rendition of the verdict. The granting of a new trial in such case is a matter of discretion."

In the late case of Wagers v. State, Okl. Cr., 370 P.2d 567 (1962), in passing on this same question, this Court held:

"The Oklahoma statute provides, among other things, that citizens residing within the State are eligible to serve on a jury who have never been convicted of any infamous crime or served a term of imprisonment in any penitentiary in Oklahoma for the commission of a felony. 38 O.S.1951 § 28."

It will be noted that Judge Brett, who wrote this opinion, simply added "in Oklahoma". He cites with approval both the Queenan and John cases.

These three cases have never been overruled, and it would seem that the term in our statute "any infamous crime" or "any penitentiary" means "within the State of Oklahoma". However, the Court at this time does not think that this is what the Legislature had in mind when this statute was amended in 1959, and we feel that a better interpretation of the law is to be found in the case of Beasley v. State, 39 Ala.App. 182, 96 So.2d 693, an Alabama case cited by the State in its brief. The Court there said:

"Inasmuch as the juror here stood mute when he should have spoken, he practiced a deception on the court and the defendant, and the deception was as to a matter reflecting on his credibility."

And in the body of the opinion the Court said:

" * * * [W]e are in accord with the opinions of the Court of Appeals hereinafter cited, which hold that a new trial must be granted where a prospective juror did not answer correctly the material questions propounded by the court in qualifying the jury and where such juror was accepted on the jury which tried the case. A new trial must be granted under such circumstances irrespective of whether the concealment was deliberate or unintentional". (Citing Alabama cases in support thereof.)

In Beasley v. State (Ala.), supra, defendant was indicted for carnal knowledge or abuse in attempt threat, of a female under 12 years of age. On voir dire, when the court was qualifying the jury, the venire was asked in effect if any among them had ever been convicted of a crime involving moral turpitude. William O. Jenkins was silent. One of the grounds for new trial was that Jenkins had been convicted, in the same court (Dade Circuit Court) on a charge of adultery. The Court of Appeals held that the evidence established this juror's conviction for adultery, that defendant exercised due diligence to have avoided placing him on jury, that conviction for adultery was, at common law and under statute, a disqualification propter delictum and hence ground for challenge and failure of the trial court to grant the motion for new trial on the ground of such disqualification was error.

We do not believe that because this conviction and incarceration took place in another State would make any differ-

ence., The Legislature intended that a person convicted of *any* infamous crime or who had served a term of imprisonment in *any* penitentiary for the commission of a felony *should not* be qualified for jury duty.

For these reasons, we are of the opinion that in this case, which is replete with these so called harmless errors, we must reverse and remand the same for a new trial.

NIX, J., concurs.

BUSSEY, J., not participating.